DISCIPLINARY COUNSEL *v.* DOELLMAN.

[Cite as *Disciplinary Counsel v. Doellman*,

127 Ohio St.3d 411, 2010-Ohio-5990.]

*Attorneys — Misconduct — Commingling of funds — Failure to maintain proper IOLTA account — Failure to maintain complete records of client funds in lawyer's possession — Failure to promptly deliver to client funds to which client is entitled — Engaging in conduct adversely reflecting on fitness to practice law — One-year suspension, all stayed on conditions.*

(No. 2010-0805 — Submitted August 10, 2010 — Decided December 15, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-040.

_____

**Per Curiam**.

{¶ 1} Respondent Norbert Mark Doellman Jr. of Butler County, Ohio, Attorney Registration No. 0002122, was admitted to the practice of law in Ohio in November 1976. In October 2009, relator, Disciplinary Counsel, filed a three-count amended complaint charging respondent with violations of the Code of Professional Responsibility. Relator alleged that respondent had improperly withheld client funds and that he had not held client funds in a separate trust account, resulting in the commingling of client and personal and business funds. Respondent answered the amended complaint, and the parties agreed upon stipulations of facts, some (but not all) violations, and mitigating factors.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline heard the case, issued findings of fact, and concluded that respondent had violated DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects upon his fitness to practice law), 9-102(A) (all funds paid to a lawyer

shall be deposited in an identifiable account containing no funds belonging to the lawyer), 9-102(B)(3) (a lawyer shall maintain complete records of all client funds coming into the possession of the lawyer and render appropriate accounting), 9-102(B)(4) (a lawyer shall promptly pay the client any funds the client is entitled to receive), and 9-102(B)(1) (a lawyer shall promptly notify a client of the receipt of client funds). The panel further concluded that respondent had violated DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice) as alleged in Count II, but found that relator had not proved any such violation as alleged in Counts I and III. Finally, the panel found that relator had failed to prove any violation of DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) as alleged in Count II.

{¶ 3} The panel recommended that respondent be suspended from the practice of law for one year and that the suspension be stayed on the following conditions: (1) respondent must make full restitution, (2) a monitor appointed by relator must oversee respondent's legal practice and the management of his IOLTA account during the stayed suspension, and (3) respondent must comply with his OLAP contract and with the recommendations of his mental-health professionals.

{¶ 4} The board adopted the panel's findings of fact and conclusions of law and the recommended sanction. Relator objects in part. We accept the board's findings of fact, conclusions of law, and the recommended sanction.

## Facts

{¶ 5} During the time in question, respondent was a sole practitioner in Butler County, with an emphasis on debt collections. First National Bank of Southwestern Ohio, n.k.a. First Financial Bank ("First Financial" or "the bank") hired respondent as a collection attorney in 1981. Respondent and First Financial agreed that he would receive a one-third contingency fee on debts collected by

him, whether they were paid to his office or directly to the bank. If debts were paid to his office, respondent would remit two-thirds to the bank.

{¶ 6} When respondent began representing First Financial, separate client trust accounts were not required. At the request of First Financial, respondent established a separate trust account to be used exclusively to deposit the bank's collection funds. When IOLTA accounts became mandatory in 1985, respondent established such an account at First Financial and deposited other clients' funds in that account as required. However, respondent did not convert the existing account into an IOLTA account, and he continued to deposit the bank's collection proceeds in the non-IOLTA account until March 2001. He regularly left his portion of the fees from this collection work in the same bank account and used the account for personal and business transactions unrelated to the practice of law. Respondent testified that he continued to use the non-IOLTA account because he was not aware at the time that he could have more than one IOLTA account.

{¶ 7} In March 2001, First Financial terminated respondent's collection services. At that time, respondent had over 150 collection files. First Financial requested that respondent return the collection files and provide an accounting. Despite repeated requests, respondent did not return all of the files, provide a complete accounting, or turn over all funds that he had received on behalf of the bank.

{¶ 8} At the same time, respondent was experiencing financial difficulties and was unable to pay First Financial for personal loans that he had obtained from the bank. In an effort to prevent First Financial from applying funds in his business accounts against the amounts owed for these personal loans, respondent closed his non-IOLTA First Financial account and opened a new non-IOLTA account for that purpose at Key Bank.

**{¶ 9}** Although he had been terminated by First Financial, respondent continued to receive checks from debtors and clerks of court pursuant to garnishment and collection actions that he had undertaken on behalf of the bank. From June 2001 through April 2002, respondent deposited 38 checks totaling $2,764.46 for First Financial debt collections into the Key Bank non-IOLTA account. Respondent was entitled to one-third of these checks as a legal fee and owed First Financial two-thirds ($1,842.97).

**{¶ 10}** Respondent did not segregate the funds owed to First Financial from his own one-third fee and expended funds from the Key Bank account for personal and business expenses. The account balance regularly fell below the $1,842.97 that respondent owed to First Financial. Additionally, during this period, respondent received a large number of checks in envelopes that he did not open. He did not immediately forward these checks to First Financial. Eventually, respondent gave the checks to his attorney, who turned them over to First Financial. Respondent did not turn over the funds that he owed First Financial from the 38 cashed checks.

**{¶ 11}** On June 22, 2001, First Financial filed suit against respondent in the Butler County Court of Common Pleas for breach of contract, unjust enrichment, conversion, and replevin. Respondent filed an answer and counterclaim in which he alleged that First Financial owed him more than $100,000 and admitted that he possessed funds from First Financial debt collections that he was holding as a lien. Respondent believed that First Financial had obtained direct payments from debtors in collection actions that he had pursued on behalf of the bank without paying him his fee. Respondent testified that he believed that the amounts he and the bank owed each other would be sorted out as part of the litigation.

**{¶ 12}** Respondent's conduct during the litigation was, at best, inadequate and dilatory, and, at worst, contemptuous. Respondent failed to respond

adequately to written discovery requests, did not attend scheduled court hearings; did not comply with the trial court's order compelling him to produce documents and files to First Financial, and did not appear at his scheduled deposition.[1]

{¶ 13} In May 2002, First Financial moved for sanctions against respondent for his failure to comply with the trial court's order compelling discovery. Respondent did not file a response and did not attend the June 6, 2002 hearing on the motion. Respondent testified that the court's bailiff had told him to remain with his father, who was undergoing surgery. After the hearing, the trial court ordered respondent to turn over all of First Financial's files within two days, issued a judgment against respondent on the issue of liability, dismissed respondent's counterclaims (precluding him from proving his counterclaim against First Financial), and ordered respondent to pay the bank's costs and attorney fees for the motion for sanctions. On June 6, 2002, the trial court also granted the bank's motion seeking escrow of all funds that both respondent and the bank had collected relating to the collection cases.

{¶ 14} Respondent did not produce the files as ordered, and on June 18, 2002, the trial court issued an order allowing First Financial access to his office to retrieve the files. Respondent's landlord granted the bank access to the office, and First Financial seized every file or document that related to the bank.

{¶ 15} The trial court scheduled a hearing to determine the bank's damages, but respondent failed to appear at the hearing. In February 2003, the trial court entered a judgment against respondent for $279,292 as a sanction for his failure to comply with the bank's discovery requests and the trial court's orders. In April 2006, the Twelfth District Court of Appeals held that the trial court erred in holding the June 6, 2002 hearing in respondent's absence when the evidence indicated that the court bailiff had excused his attendance from the

---

1. Relator did not allege that respondent's conduct during the litigation was an independent violation of the Code of Professional Responsibility.

hearing. The court remanded the case for a new hearing on the motion for sanctions. On remand, the trial court again issued a judgment against respondent on the issue of liability, dismissed his counterclaims, and issued a final judgment against respondent for $279,292.[2]

{¶ 16} In March 2008, respondent filed a Chapter 7 bankruptcy petition seeking to discharge various debts, including the $279,292 judgment granted to First Financial. The bank filed an adversary action contesting the dischargeability of the judgment, asserting that the judgment was based upon respondent's fraud while acting in a fiduciary capacity. The bankruptcy court discharged the debt, concluding that the judgment was based on respondent's negligence, not fraudulent or deceitful acts.

{¶ 17} As an explanation for his conduct during the litigation, respondent testified before the panel that he was suffering from clinical depression. He began psychiatric treatment in April 2002, and his psychiatrist ordered him to be hospitalized for severe depression in March 2003. According to respondent's testimony and a letter from his psychiatrist at the time, he had essentially "shut down," could not organize or motivate himself, and did not open his correspondence.

{¶ 18} During 2001 and 2002, respondent was also engaged in collection efforts for other clients. He deposited funds belonging to those clients into his Key Bank non-IOLTA account rather than his IOLTA account at First Financial. Respondent testified that he did so to protect the funds from being seized by First Financial. The non-IOLTA account regularly held respondent's personal and business funds, and respondent used the account to conduct personal and business transactions unrelated to the practice of law.

---

2. The record reflects two different figures for the amount of the sanction. Because $279,292 is the amount most often cited, we use that figure without endorsing it as the correct one.

**{¶ 19}** Respondent currently practices law on a very limited basis. He does collection work, performs basic research, and assists people dealing with simple foreclosures. He has been diagnosed with Major Depression Recurrent and Generalized Anxiety Disorder and is under the care of a psychiatrist. He finds it difficult to complete tasks, but with effort he can work successfully for short periods and gains satisfaction from doing so. On November 2, 2009, respondent signed a four-year contract with OLAP. On January 28, 2010, respondent promised in writing to pay First Financial a total of $1,842.97 in 12 monthly payments as restitution. He made the first payment on that date.

### Misconduct

*Count I*

**{¶ 20}** In Count I, relator alleged that between 1981 and March 2001 respondent violated the Code of Professional Responsibility by failing to maintain an IOLTA account to hold proceeds from his collection efforts for First Financial and by depositing the funds collected into his non-IOLTA trust account. Relator also alleged that the non-IOLTA account regularly held respondent's personal and business funds and that he used that account for personal and business transactions unrelated to the practice of law.

**{¶ 21}** The parties stipulated and the board found that the conduct described in Count I violated DR 1-102(A)(6) and 9-102(A).

**{¶ 22}** Respondent disputed relator's allegation that his conduct with regard to Count I violated DR 1-102(A)(5). The board found that relator failed to prove that allegation by clear and convincing evidence because there was no proof of injury to the client and respondent did not interfere with the administration of justice. The board recommended dismissal of this violation.

*Count II*

**{¶ 23}** In Count II, relator alleged that after First Financial terminated respondent, he continued to receive checks from debtors of the bank.

Specifically, relator alleges that respondent collected at least 38 checks worth $2,764 from debtors after his termination and that he did not (1) forward the uncashed checks to First Financial, (2) provide First Financial with any notice that he had received the checks, (3) provide First Financial with an accounting, or (4) deposit the checks into an IOLTA account for safekeeping until any payment dispute over the division of the checks was resolved. Instead, respondent deposited the checks into his non-IOLTA account at Key Bank and utilized the funds for his own personal and business expenses, allowing the balance of the account to fall below the amount owed to First Financial on multiple occasions.

{¶ 24} The parties stipulated and the board found that respondent's conduct as described in Count II violated DR 1-102(A)(6), 9-102(A), 9-102(B)(3), and 9-102(B)(4).

{¶ 25} Respondent disputed three violations alleged by relator in relation to Count II. First, respondent disputed that his conduct violated DR 1-102(A)(5). The board concluded that relator proved a violation of this Disciplinary Rule by clear and convincing evidence because respondent failed to maintain complete records of First Financial funds that came into his possession and because he delayed the determination of the amount owed to the bank, thereby interfering with the administration of justice. Respondent does not now object to the board's conclusion that he violated DR 1-102(A)(5).

{¶ 26} Respondent also disputed that his conduct violated DR 9-102(B)(1). The board determined that relator had proved this violation by clear and convincing evidence because respondent failed to provide First Financial with timely notice of the specific checks that he either deposited in the Key Bank account or left unopened. As with the previous violation, respondent does not object to the board's conclusion that he violated DR 9-102(B)(1).

{¶ 27} Finally, respondent disputed relator's allegation that his conduct violated DR 1-102(A)(4). The board agreed with respondent that relator had

failed to prove by clear and convincing evidence that his conduct violated this rule. The board noted that pursuant to advice from counsel, respondent's answer filed in the litigation disclosed that he was holding First Financial collection funds upon which he claimed a lien. The board also considered that respondent intended that the amount owed to him by First Financial and the amount that he owed the bank would be sorted out as part of the litigation. The board recommended dismissal of this charge.

*Count III*

{¶ 28} In Count III, relator alleged that respondent failed to maintain an IOLTA account in 2001, 2002, and 2003 and that he deposited funds collected on behalf of multiple clients into his non-IOLTA Key Bank account. Relator further alleged that the account regularly held respondent's personal and business funds and that respondent used the account for transactions unrelated to the practice of law.

{¶ 29} The parties stipulated and the board found that respondent's conduct described in Count III violated DR 1-102(A)(6) and 9-102(A). Respondent disputed the allegation that his conduct described in Count III violated DR 1-102(A)(5). As with Count I, the board agreed with respondent that relator had failed to prove by clear and convincing evidence that his conduct violated this rule because there was no proof of injury to any clients and respondent did not interfere with the administration of justice. The board recommended dismissal of this violation.

**Objections**

{¶ 30} Relator objects to the board's recommendation that the charge alleging a violation of DR 1-102(A)(4) in Count II and the charges alleging violations of DR 1-102(A)(5) in Counts I and III be dismissed. A question arose during oral argument as to whether the board's recommendation to dismiss these charges precludes this court from reviewing relator's objections and, if we find

merit to the objections, from determining that respondent violated these Disciplinary Rules. We conclude that it does not.

{¶ 31} When a unanimous panel finds insufficient evidence to support an alleged violation, it may dismiss the count without referring it to the board or this court for review pursuant to Gov.Bar R. V(6)(H). *Cuyahoga Cty. Bar Assn. v. Marosan*, 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837, ¶13. When the panel has dismissed a violation for lack of sufficient evidence, we will not disturb that finding. Id. However, in this case the panel did not dismiss the alleged violations; it recommended their dismissal. To dismiss a claim, the panel must give written notice of the action taken to the board, the respondent, all counsel of record, Disciplinary Counsel, the certified grievance committee for the local bar association, and others. Gov.Bar R. V(6)(H). The panel in this case, quite rightly, did not follow this procedure, as it was only recommending dismissal.

{¶ 32} When the panel recommends dismissal, the board may dismiss the count by reporting the dismissal to the secretary of the board, who shall notify the same persons and organizations that would have received notice if the complaint had been dismissed by the hearing panel. Gov.Bar R. V(6)(K).

{¶ 33} The board adopted the panel's findings of fact, conclusions of law, and recommendation. However, the record does not establish that the board provided the notices required by Gov.Bar R. V.(6)(K). Thus, the board did not effectuate a dismissal, and this court is not precluded from addressing relator's objections to the recommended dismissals. See *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (rejecting the respondent's argument that the board and this court could not review allegations for which the panel had recommended, but had not effectuated, dismissal).

{¶ 34} Nonetheless, we agree with the board's recommendations to dismiss the alleged violations of DR 1-102(A)(4) in Count II and DR 1-102(A)(5) in Counts I and III. "Relator must prove by clear and convincing evidence the

facts necessary to establish a violation of a Disciplinary Rule." *Disciplinary Counsel v. Bunstine*, 123 Ohio St.3d 298, 2009-Ohio-5286, 915 N.E.2d 1224, ¶ 12, citing Gov.Bar R. V(6)(J) and *Disciplinary Counsel v. Jackson* (1998), 81 Ohio St.3d 308, 310, 691 N.E.2d 262. Relator did not establish these violations by clear and convincing evidence.

*DR 1-102(A)(4)*

{¶ 35} Relator objects to the board's determination that the violation of DR 1-102(A)(4) alleged in Count II was not demonstrated by clear and convincing evidence. Relator argues that the following evidence sufficiently proved respondent's deceptive and dishonest conduct in violation of DR 1-102(A)(4): (1) respondent's failure to comply with First Financial's repeated requests that he cease all collection activities on its behalf, (2) his failure to notify the bank of his receipt of the 38 checks that he deposited between June 2001 and April 2002, and (3) his use of the funds for his own personal benefit instead of holding them in escrow pending the court's decision on First Financial's lawsuit.

{¶ 36} We agree with the board. Although respondent's conduct was wrong, relator did not establish by clear and convincing evidence that he acted in a deceptive or dishonest manner. Respondent did not represent to the bank or to the trial court that he had stopped collecting funds on behalf of First Financial. Indeed, as the board noted, respondent filed an answer during the litigation in which he disclosed that he was holding funds that he had collected on behalf of First Financial and that he claimed a lien on the funds. Respondent believed that First Financial owed him fees and that the amount each owed the other would be sorted out as part of the litigation. Respondent's failure to participate in the litigation, which was a product of his mental state at the time of the litigation, does not transform his violations into deceptive or dishonest conduct.

{¶ 37} Furthermore, we note that the United States Bankruptcy Court for the Southern District of Ohio recently discharged the $272,292 sanction that the

trial court ordered respondent to pay to First Financial based on his conduct during the litigation. In doing so, the bankruptcy court rejected First Financial's argument that respondent's conduct was fraudulent and deceitful and concluded that respondent was merely negligent. Although the bankruptcy court's decision is not binding on this court's determination of whether respondent's conduct was deceitful or dishonest, it further supports the board's conclusion that respondent did not violate DR 1-102(A)(4).

{¶ 38} We are not persuaded by relator's objection. We agree with the board that relator has not established by clear and convincing evidence that respondent violated DR 1-102(A)(4). Accordingly, we dismiss this violation as alleged in Count II.

*DR 1-102(A)(5)*

{¶ 39} Relator also objects to the board's conclusion with respect to Counts I and III that respondent did not violate DR 1-102(A)(5). Relator argues that respondent's failure to use an IOLTA account to hold client funds and the resultant commingling of personal and client funds violated DR 1-102(A)(5). In support of this objection, relator cites *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31(holding that the respondent violated DR 1-102(A)(5) by using his IOLTA account as a personal bank account, commingling client and personal funds, causing several IOLTA account overdrafts, and failing to maintain the required accounting of client funds); *Disciplinary Counsel v. Tyack*, 107 Ohio St.3d 35, 2005-Ohio-5833, 836 N.E.2d 568 (holding that the respondent violated DR 1-102(A)(5) by failing to deposit unearned retainers into an IOLTA account, commingling funds, bouncing a check for filing fees, and failing to respond to attempts to collect the funds from the dishonored check); *Disciplinary Counsel v. McCauley*, 114 Ohio St.3d 461, 2007-Ohio-4259, 873 N.E.2d 269 (holding that the respondent violated DR 1-102(A)(5) by using his IOLTA account as a personal account, commingling client funds, and

causing multiple overdrafts); and *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198 (same).

{¶ 40} Relator's reliance on these cases is not persuasive. First, the respondents in both *Freeman* and *McCauley* stipulated that their conduct violated DR 1-102(A)(5), whereas in this case, respondent disputed this violation. *Freeman* at ¶ 1; *McCauley* at ¶ 2. Further, none of these cases demand a conclusion that failure to use an IOLTA account or commingling funds constitutes a violation of DR 1-102(A)(5).

{¶ 41} This court has declined to find violations of DR 1-102(A)(5) when attorneys have commingled funds. See, e.g., *Columbus Bar Assn. v. Chasser*, 124 Ohio St.3d 578, 2010-Ohio-956, 925 N.E.2d 595, ¶ 18-19; *Ohio State Bar Assn. v. McCray*, 109 Ohio St.3d 43, 2006-Ohio-1828, 845 N.E.2d 509, ¶14-15. In *Chasser*, this court affirmed the board's conclusions that the respondent violated, among other rules, DR 1-102(A)(6) and 9-102(A), the same provisions that respondent violated in Counts I and III in this case. Id. at ¶ 18. The court also affirmed the board's conclusion that although the respondent withheld client funds, used the funds for his own benefit, and failed to maintain complete records of the funds, he did not engage in conduct that was prejudicial to the administration of justice in violation of DR 1-102(A)(5). Id. at ¶ 19. In *McCray*, the respondent improperly withdrew $5,000 from a client trust account. Id. at ¶ 14. This court agreed with the board's conclusion that the relator did not establish that the attorney's conduct was prejudicial to the administration of justice, because there was no evidence that the withdrawal adversely affected the client or that the respondent's actions were intended to or did deceive the trial court or the client.

{¶ 42} Relator has not established by clear and convincing evidence that by depositing client funds in a non-IOLTA account and commingling client and personal funds, respondent prejudiced the administration of justice. We agree

with the board that relator has not established that respondent violated DR 1-102(A)(5). Accordingly, we dismiss the charge as to both Count I and Count III.

{¶ 43} Having rejected relator's objections, we adopt the board's findings of fact and misconduct. The record demonstrates by clear and convincing evidence that respondent's conduct described in Counts I and III violated DR 1-102(A)(6) and 9-102(A) and that the conduct described in Count II violated DR 1-102(A)(5), 1-102(A)(6), 9-102(A), 9-102(B)(1), 9-102(B)(3), and 9-102(B)(4).

{¶ 44} We now turn to the board's recommended sanction.

### Sanction

{¶ 45} The primary purpose of disciplinary sanctions is not to punish the offender but to protect the public. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer has violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 46} The board found as an aggravating factor that respondent committed multiple violations. The board also found factors mitigating respondent's conduct, including (1) his lack of a prior disciplinary record, (2) his full and free disclosure of his conduct and his cooperative attitude toward these proceedings, (3) his good reputation among friends and clients, (4) his previous

sanction for his conduct relating to the litigation, and (5) his promise to make restitution to First Financial.

{¶ 47} Relator objects to the board's failure to find that respondent's conduct established a pattern of misconduct (BCGD Proc.Reg. 10(B)(1)(c)) and selfish motive (BCGD Proc.Reg. 10(B)(1)(b)) as aggravating factors. Relator argues that respondent engaged in a pattern of misconduct by "failing to use an IOLTA account to hold collection proceeds for six clients over a period of 18 years and as a result commingling client funds." Relator's argument is technically accurate, but misleading. Although Counts I and III both involve misconduct with respect to respondent's failure to use an IOLTA account and the commingling of client and personal funds, the counts involve separate and independent violations, not a pattern as relator suggests. Count I relates to respondent's failure to maintain an IOLTA account to hold proceeds collected for First Financial. This violation occurred because First Financial requested that respondent maintain a separate account for its funds and respondent did not know that he could maintain more than one IOLTA account. Count III relates to respondent's conduct depositing other clients' funds in a non-IOLTA account subsequent to his termination by First Financial. This violation resulted from respondent's belief that if he placed the funds into the IOLTA account at First Financial, the bank would seize the funds to pay off respondent's delinquent personal loans. Although both counts relate to respondent's failure to properly utilize an IOLTA account, the counts relate to independent violations, not a pattern of misconduct. See, e.g., *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, ¶ 34, fn. 4 (declining to overturn the board's conclusion that the respondent had not engaged in a pattern of misconduct when the conduct involved separate acts that did not constitute a "salient" pattern).

**{¶ 48}** Although respondent did not engage in a pattern of misconduct with respect to the trust-account-related violations in Counts I and III, we agree with relator that respondent engaged in a pattern of misconduct in relation to Count II by accepting and depositing 38 checks totaling $2,764.46 from bank debtors over ten months and expending these funds instead of turning them over to the bank or escrowing them.

**{¶ 49}** Relator also contends that the board erred by not considering respondent's selfish motive as an aggravating factor. We agree. Respondent acted with a selfish motive in retaining the funds owed to First Financial because he believed that he was "entitled to [his] share of those funds."

**{¶ 50}** After considering the aggravating and mitigating factors, the board recommended a one-year suspension from the practice of law, all of it stayed on certain conditions. Relator objects to the recommended sanction and argues that respondent's conduct mandates an actual suspension. Relator asks the court to impose a 24-month suspension with 12 months stayed. Although we agree with relator that the board failed to consider as aggravating factors that respondent engaged in a pattern of misconduct and acted with a selfish motive, we agree with the board's recommended sanction, even considering these additional aggravating factors.

**{¶ 51}** While relator's brief sets forth multiple arguments in support of an actual suspension, relator conceded during oral argument that the appropriate sanction depends on whether relator violated DR 1-102(A)(4) by engaging in dishonest or deceitful conduct.[3] Relator argues that this court's case law requires

_____

3. {¶ a} Although relator concedes that the appropriate sanction turns on whether respondent's conduct was deceitful or dishonest, we must address another argument that relator sets forth in support of an actual suspension. Relator points to a letter from licensed social worker Mary Hattemer, who observed that respondent "demonstrates a lack of motivation and follow through," "finds it difficult to complete a task," "lacks the energy to accomplish the task," "ha[s] some trouble accomplishing * * * goals," and "at times does not maintain basic hygiene." Relator argues that based on this letter, an actual suspension is appropriate because respondent's recovery is

an actual suspension when an attorney engages in a pattern of dishonest conduct. See, e.g., *Disciplinary Counsel v. Brumbaugh*, 99 Ohio St.3d 65, 2003-Ohio-2470, 788 N.E.2d 1076, at ¶ 13 ("An actual suspension from the practice of law is the general sanction for an attorney that engages in a course of conduct that violates DR 1-102(A)(4)"); *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237 ("Respect for our profession is diminished with every deceitful act of a lawyer.  We cannot expect citizens to trust that lawyers are honest if we have not yet sanctioned those who are not.  * * * When an attorney engages in a course of conduct resulting in a finding that the attorney has violated DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time").

{¶ 52} Relator is correct that dishonest or deceitful conduct generally mandates an actual suspension.  However, as we stated in relation to Count II, although respondent's conduct was wrong, it was not deceptive or dishonest.  Accordingly, we are not constrained to impose an actual suspension.

{¶ 53} Further, as the board noted, the cases cited by relator in support of a more severe sanction are not persuasive in this case.  See *Disciplinary Counsel v. Wolanin*, 121 Ohio St.3d 390, 2009-Ohio-1393, 904 N.E.2d 879; *Cuyahoga Cty. Bar Assn. v. Maybaum*, 112 Ohio St.3d 93, 2006-Ohio-6507, 858 N.E.2d 359; and *Disciplinary Counsel v. Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827,

---

incomplete, and in the interest of protecting the public, more time should be allowed so that respondent may complete treatment and recovery.  See *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 22.

{¶ b} Relator ignores the second paragraph of the same letter, in which Hattemer states:  "Mr. Doellman is engaging in a limited practice of law at this time.  According to the client he helps with collections; does basic research, and volunteers to assist people dealing with simple foreclosures.  When he is focused on simple tasks, he appears to be more energized.  According to Mr. Doellman he is able to follow through with these simple tasks and receives a sense of satisfaction when the task is completed."  Moreover, respondent has voluntarily limited his legal practice to a small number of basic matters that he is able to manage in his current mental state.  We do not agree with relator that an actual suspension is necessary to protect the public or to allow respondent additional time for treatment and recovery.

836 N.E.2d 564. These cases involved more egregious misconduct, included findings of dishonesty, fraud, deceit, or misrepresentation, and involved other aggravating factors, such as failure to fully participate in and a dismissive attitude toward the disciplinary process, lack of sincerity in the disciplinary hearing, client vulnerability, lack of remorse, or a prior disciplinary record.

{¶ 54} In cases where attorneys have misused client trust accounts, as respondent did in this case, but without an improper motive or deceit, this court has regularly imposed six-month suspensions, conditionally stayed. See, e.g., *Disciplinary Counsel v. Vivyan*, 125 Ohio St.3d 12, 2010-Ohio-650, 925 N.E.2d 947, ¶ 7-12; *Disciplinary Counsel v. Fletcher*, 122 Ohio St.3d 390, 2009-Ohio-3480, 911 N.E.2d 897; *Cuyahoga Cty. Bar Assn. v. Nance*, 119 Ohio St.3d 55, 2008-Ohio-3333, 891 N.E.2d 746; *Columbus Bar Assn. v. Peden*, 118 Ohio St.3d 244, 2008-Ohio-2237, 887 N.E.2d 1183; *Disciplinary Counsel v. Newcomer*, 119 Ohio St.3d 351, 2008-Ohio-4492, 894 N.E.2d 50.

{¶ 55} But respondent's conduct went beyond misusing his IOLTA account and commingling funds. He deliberately withheld funds from First Financial and failed to maintain and provide the bank with an accounting of the funds. We agree with the board that a more severe sanction than a six-month stayed suspension is appropriate. At the same time, although we recognize as aggravating the fact that respondent (1) committed multiple violations, (2) engaged in a pattern of misconduct, and (3) acted with a selfish motive, these factors are outweighed by the mitigating factors. These mitigating factors include (1) respondent's lack of a prior disciplinary record, (2) his full and free disclosure of his conduct and his cooperative attitude toward these proceedings, (3) his good reputation among friends and clients, (4) the sanction already imposed by the Butler County Common Pleas Court in the First Financial litigation, and (5) his promise to make restitution to First Financial. Further, we agree with the board

that respondent is not likely to ever repeat his transgressions. See, e.g., *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206.

{¶ 56} Having reviewed the record, weighed the aggravating and mitigating factors, and considered the sanctions imposed for comparable conduct, we adopt the board's recommended sanction of a one-year suspension, stayed on conditions.

### Conclusion

{¶ 57} Norbert Mark Doellman Jr. is suspended from the practice of law in Ohio for one year. However, the suspension is stayed on the following conditions: (1) respondent must not commit any further misconduct during the stayed suspension period, (2) respondent must make full restitution to First Financial, totaling $1,842.97 plus five percent interest from January 28, 2010, in 12 monthly payments as agreed, (3) relator must appoint a monitor to oversee respondent's legal practice and the management of his IOLTA account during the period of the stayed suspension, and (4) respondent must comply with his OLAP contract and follow the recommendations of his current mental-health professionals. If respondent violates these conditions, the stay will be lifted, and respondent will serve the one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, ACTING C.J., and BRYANT, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PEGGY L. BRYANT, J., of the Tenth Appellate District, sitting for BROWN, C.J.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Senior Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson and George Jonson, for respondent.

_____