AKRON BAR ASSOCIATION *v.* BINGER.

[Cite as *Akron Bar Assn. v. Binger,* 139 Ohio St.3d 186, 2014-Ohio-2114.]

*Attorneys—Misconduct—Notarizing documents without witnessing signatures—Failing to advise client of lack of professional liability insurance—18-month suspension, stayed on condition.*

(No. 2013-1263—Submitted October 9, 2013—Decided May 22, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-064.

————————————

**Per Curiam**.

{¶ 1} Respondent, Trent Allen Binger of Munroe Falls, Ohio, Attorney Registration No. 0073995, was admitted to the practice of law in Ohio in 2001.

{¶ 2} On August 6, 2012, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified a two-count complaint against Binger to the board. In Count I of that complaint, relator, Akron Bar Association, alleged that Binger had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness to practice law by notarizing documents without having witnessed the signatures. Count II alleged that Binger had failed to advise a client that he did not maintain professional liability insurance. Binger admitted to both counts of misconduct in his answer.

{¶ 3} Relator later amended its complaint to add two new counts. Count III alleged that Binger failed to comply with the continuing-legal-education ("CLE") requirements of Gov.Bar R. X. Count IV alleged that Binger failed to keep this court's Office of Attorney Services apprised of his current residence and office addresses as required by Gov.Bar R. VI(1)(D).

**{¶ 4}** The parties submitted joint stipulations of fact, misconduct, and aggravating and mitigating factors and stipulated to the dismissal of Counts III and IV of the amended complaint.[1] The panel also heard testimony from Binger and Rhonda G. Davis, an attorney who served on the panel assigned by relator to investigate Binger's alleged misconduct.

**{¶ 5}** The panel issued a report rejecting the parties' stipulations, finding by clear and convincing evidence that Binger had engaged in the misconduct charged in Counts I and II of the complaint, but purported to dismiss Counts III and IV.[2] The panel recommended that Binger be suspended from the practice of law in Ohio for six months, all stayed on the conditions that he engage in no further misconduct, enroll in a mentoring program, and serve one year of probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 6}** Having thoroughly reviewed the record, we adopt the board's findings of fact and misconduct and dismiss Counts III and IV of relator's amended complaint. In light of significant aggravating factors, we conclude that an 18-month suspension, all stayed on condition, is the appropriate sanction for Binger's misconduct.

---

1. Although the stipulations are referred to throughout the hearing and in the panel and board reports, they were not transmitted to this court as part of the record.

2. Gov.Bar R. V(6)(G) permits a unanimous panel of the board to order the dismissal of a count without referring the matter to the board or this court for review, but it requires the panel to provide notice to counsel of record and other interested parties. Without that notice, the dismissal is not effective. *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 31. The record in this case does not establish that the panel complied with the notice requirements of that rule. Instead, the panel certified its findings of fact and recommendations to the board in accordance with Gov.Bar R. V(6)(H) and (I). Because the board did not order dismissal and provide the notices required by Gov.Bar R. V(6)(J), we treat the purported dismissal as a recommendation that Counts III and IV be dismissed. *See, e.g.*, *In re Complaint Against Harper*, 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (1996); *Doellman* at ¶ 31-33.

**Misconduct**

Count I

{¶ 7}  Binger prepared a petition for dissolution of marriage and waiver of service of summons and gave them to his client, Georgie M. Herro, to give to his wife for her signature.  Mr. Herro returned the signed documents to Binger, who admits that he notarized Mrs. Herro's signatures without having witnessed them.[3]  The board found that this conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).  We adopt these findings of fact and misconduct.

Count II

{¶ 8}  In his answer and testimony, Binger admitted that he did not maintain professional liability insurance while he represented Herro and that he did not notify Herro of that fact or have him acknowledge it in writing.  He stated, however, that he had placed a sign in his office stating that he was a self-insured attorney.  The board found that this conduct violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance and obtain a signed acknowledgment of that notice from the client).  We agree and adopt these findings of fact and misconduct.

Count III

{¶ 9}  In Count III of the amended complaint, relator alleged that by failing to timely complete and report at least 24 hours of CLE in the 2006-2007, 2008-2009, and 2010-2011 biennia, Binger violated Gov.Bar R. X(3)(A) (requiring each attorney admitted to the practice of law in Ohio to complete a minimum of 24 credit hours of CLE for each biennial compliance period) and that

---

3. Binger testified, and relator's counsel confirmed, that Mrs. Herro ultimately acknowledged that the signatures on the documents in question were her own.

he failed to come into compliance after receiving notice of noncompliance under Gov.Bar R. X(6)(B) (now Gov.Bar R. X(18)(B)). Relator further alleged that Binger has been fined and suspended by the Commission on Continuing Legal Education for his noncompliance on at least one occasion.

{¶ 10} The orders of the CLE commission reflect that Binger has previously been sanctioned for the misconduct alleged in Count III of relator's amended complaint on three occasions. *See* 120 Ohio St.3d 1431, 2008-Ohio-6326, 897 N.E.2d 662 (imposing a monetary sanction of $570 for not completing the 2006-2007 CLE hours required by Gov.Bar R. X(3) and not filing evidence of compliance or coming into compliance despite receiving notice of noncompliance under Gov.Bar R. X(6)(B)); *In re Continuing Legal Edn. Sanction of Binger*, 127 Ohio St.3d 1467, 2010-Ohio-6302, 938 N.E.2d 368 (imposing a monetary sanction of $600 for the same violations in 2008-2009); and *In re Continuing Legal Edn. Suspension of Binger*, 133 Ohio St.3d 1472, 2012-Ohio-5238, 978 N.E.2d 198 (imposing a monetary sanction of $600 for the same violations in 2010-2011 and suspending Binger from the practice of law in Ohio effective November 13, 2012). On November 20, 2012, we reinstated Binger to the practice of law. *In re Continuing Legal Edn. Suspension of Binger*, 133 Ohio St.3d 1483, 2012-Ohio-5368, 978 N.E.2d 208. Thus, Binger has already been sanctioned for the CLE violations charged in Count III of relator's complaint and cannot be sanctioned a second time for the same misconduct. Therefore, we dismiss Count III of relator's amended complaint.

{¶ 11} Furthermore, Gov.Bar R. X(5)(C) provides, "A sanction imposed under this section [for noncompliance with CLE requirements] shall not be considered in the imposition of a sanction under Gov.Bar R. V, Section 8 [for attorney or judicial misconduct]." Therefore, the fact that Binger has been previously sanctioned for his failure to comply with the CLE requirements of

Gov.Bar R. X cannot be considered as an aggravating factor in imposing a sanction for his present misconduct.

### Count IV

{¶ 12} Count IV of relator's amended complaint alleged that Binger failed to keep the Office of Attorney Services apprised of his current residence and office addresses as required by Gov.Bar R. VI(1)(D) during relator's investigation and throughout his 2012 CLE suspension. However, relator did not present clear and convincing evidence to establish that the addresses on file with this court were not accurate. Therefore, we dismiss Count IV of relator's amended complaint.

### Sanction

{¶ 13} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).

{¶ 14} The board found that Binger's multiple offenses, BCGD Proc.Reg. 10(B)(1)(d), failure to timely comply with the CLE requirements of Gov.Bar R. X, and his failure to keep this court apprised of his residential and office addresses were aggravating factors weighing in favor of a harsher sanction, as they suggest a pattern of lack of attention to important administrative matters. In mitigation, the board found that Binger has no prior disciplinary record, did not act with a dishonest or selfish motive, and cooperated fully in the proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), and (d).

{¶ 15} Relator recommended that Binger be suspended for six months, all stayed on the conditions that he submit to a monitor and bring his CLE hours into compliance. In considering that recommendation, the board cited cases in which

we imposed sanctions ranging from a public reprimand to a six-month stayed suspension for misconduct involving the improper notarization of documents or failure to notify clients of the attorney's lack of malpractice insurance. *See Columbus Bar Assn. v. Craig*, 131 Ohio St.3d 364, 2012-Ohio-1083, 965 N.E.2d 287 (adopting a consent-to-discipline agreement and imposing a public reprimand on an attorney who forged his client's signature on an affidavit, notarized the document, and filed it with the recorder's office); *Disciplinary Counsel v. Koehler*, 132 Ohio St.3d 465, 2012-Ohio-3235, 973 N.E.2d 262 (imposing a stayed six-month suspension on an attorney who showed no remorse for having forged his client's name on an affidavit, and then falsely notarizing the document by signing his secretary's name and using her notary stamp); and *Akron Bar Assn. v. DeLoach*, 133 Ohio St.3d 329, 2012-Ohio-4629, 978 N.E.2d 181 (publicly reprimanding an attorney, in the presence of significant mitigating evidence, for failing to notify clients that she did not maintain professional liability insurance).

{¶ 16} The board concluded that improperly notarizing a document or failing to notify a client regarding the attorney's lack of professional liability insurance would typically result in a public reprimand. But, expressing concern that Binger would continue to neglect important administrative matters, the board recommends that we impose a six-month suspension, all stayed on the conditions that Binger engage in no further misconduct, serve one year of monitored probation, and enroll in a mentoring program.

{¶ 17} We agree that Binger has committed multiple offenses—an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(d). As discussed above, however, Binger's previous sanctions for failure to comply with the CLE requirements of Gov.Bar R. X cannot be considered in imposing a sanction for his current misconduct. Moreover, relator did not show by clear and convincing evidence that Binger failed to keep the Office of Attorney Services apprised of his current addresses. Therefore, we do not consider these factors in aggravation.

**{¶ 18}** We also find that with respect to Count II, Binger not only failed to notify his clients of the fact that he did not carry professional liability insurance, but he expressly represented to them that he was "self-insured." "Self-insurance" is "[a] plan under which a business maintains its own special fund to cover any loss." *Black's Law Dictionary* 875 (9th Ed.2009). Binger testified that in stating that he was self-insured, he meant that he had no insurance, and if something were to happen, his clients could sue him personally. He was unaware of any pending claims against him.

**{¶ 19}** While Binger stated that he was just following the example of another firm he had worked for, he also stated that it was his intention to make potential clients comfortable with the fact that he did not have professional liability insurance. On these facts, we find that Binger not only failed to notify his clients of the fact that he did not carry insurance, but he also affirmatively represented to them that he was self-insured, with resources set aside to cover his professional liabilities, when that was not true.

**{¶ 20}** Binger has also engaged in a pattern of misconduct in this regard, given his testimony that he (1) has filed over 1,000 cases in his career, (2) did not carry professional liability insurance from the time he commenced his solo practice in 2004 until he finally obtained coverage in June 2012, and (3) relied on a sign stating that he was self-insured to inform his clients of his uninsured status, discussing the issue with them only if they brought it up. *See* BCGD Proc.Reg. 10(B)(1)(c). Fortunately, it does not appear that any clients were harmed as a result of this misconduct.

**{¶ 21}** As mitigating factors, we find that Binger does not have a prior disciplinary record, has made full and free disclosure to the board, and demonstrated a cooperative attitude toward the disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a) and (d). We also note that he has obtained professional liability insurance and moved from a back office in an isolated

location to a busier building with more tenants in an attempt to escape his "cocoon." He has also spoken with two attorneys who he reports have expressed their willingness to serve as informal mentors for him once this disciplinary action concludes. While he has always had fee agreements for his bankruptcy clients, he has started preparing fee agreements for domestic-relations clients as well. Binger states that he has come to realize that he cannot "stand still" any more, and if his financial situation does not improve, he is open to the possibility of seeking a job with a firm where there would be more structure and oversight. Although he was described as having a "flat affect" during the investigation, the board found that he appreciated the wrongfulness of his conduct and acknowledged that his decision to notarize the Herro documents was careless and that his insurance violation was unprofessional and the result of bad judgment.

{¶ 22} We have held that misconduct involving dishonesty, fraud, deceit, or misrepresentation generally warrants an actual suspension from the practice of law. *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 13; *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. As illustrated by the cases the board cited in support of its recommended sanction, however, we have typically imposed lesser sanctions of public reprimands or six-month fully stayed suspensions for isolated notary offenses like Binger's. *See Columbus Bar Assn. v. Craig*, 131 Ohio St.3d 364, 2012-Ohio-1083, 965 N.E.2d 287; *Disciplinary Counsel v. Koehler*, 132 Ohio St.3d 465, 2012-Ohio-3235, 973 N.E.2d 262.

{¶ 23} Binger's conduct is more serious than the conduct at issue in those cases because his misconduct went beyond notarizing documents that were not signed in his presence. He also led his clients to believe that he was self-insured, rather than uninsured, for a significant period of time. Thus, we conclude that Binger's misconduct warrants a greater sanction than the six-month fully stayed

suspension recommended by relator. We believe that an 18-month suspension, all stayed on the condition that Binger commit no further misconduct, will adequately protect the public from future misconduct. We encourage Binger to seek out more experienced attorneys to assist and mentor him as he seeks to expand his practice into new areas of the law. However, we do not believe that Binger's misconduct warrants the imposition of monitored probation.

{¶ 24} Accordingly, Trent Allen Binger is suspended from the practice of law in Ohio for 18 months, all stayed on the condition that he engage in no further misconduct. Costs are taxed to Binger.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

FRENCH, J., concurs in part and dissents in part.

_____

**FRENCH, J., concurring in part and dissenting in part.**

{¶ 25} I concur in the sanction but I would order Binger to serve monitored probation for the duration of the 18-month stayed suspension.

_____

Davis & Young, L.P.A., and Ann Marie O'Brien; and Rhonda Davis & Associates, L.L.C., and Rhonda Gail Davis, for relator.

Trent Allen Binger, pro se.

_____