[This decision has been published in *Ohio Official Reports* at 74 Ohio St.3d 187.]

OFFICE OF DISCIPLINARY COUNSEL *v.* FOWERBAUGH.

[Cite as *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261.]

*Attorneys at law—Misconduct—Misleading or lying to a client concerning a legal matter entrusted to the lawyer by a client—When an attorney engages in conduct involving dishonesty, fraud, deceit, or misrepresentation, the attorney will be actually suspended from the practice of law for an appropriate period of time.*

When an attorney engages in a course of conduct that violates DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time.

(No. 95-394—Submitted September 13, 1995—Decided December 12, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-25.

———————————

{¶ 1} Relator, Office of Disciplinary Counsel, filed a complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"), charging respondent, Albert E. Fowerbaugh of Cleveland, Ohio, Attorney Registration No. 0001535, with violating DR 6-101(A)(2) (handling a legal matter without preparation adequate in the circumstances), 6-101(A)(3) (neglecting an entrusted legal matter), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and 1-102(A)(6) (engaging in conduct that adversely reflects upon his fitness to practice law). Respondent stipulated to all charged disciplinary violations, as well as many of the allegations in the complaint. The matter was heard by a panel of the board on January 13, 1995.

{¶ 2} The stipulations and testimony before the hearing panel establish that in April 1992, Patricia Veale, a resident of Florida, retained respondent to represent her in obtaining a parentage and child support order for her minor child. Beginning in May 1992, respondent conducted negotiations with the attorney for the putative father concerning a settlement on these issues. By July 1993, Veale had become concerned with respondent's representation after numerous telephone calls to respondent were made without response. Moreover, respondent had ignored Veale's requests to have the putative father pay the cost of the blood test used in determining paternity.

{¶ 3} Apparently in an attempt to placate his client, respondent misrepresented to Veale that he was proceeding with a paternity action in Summit

County Juvenile Court. In late September 1993, Veale repeatedly inquired as to the status of her case and requested copies of court documents that would confirm to her that respondent had actually filed the paternity action. On September 28, 1993, Veale received what appeared to be a copy of a complaint filed in Summit County Juvenile Court. Actually, the document was a fake.

{¶ 4} Respondent testified that shortly after misrepresenting to Veale about the filing of the case, he attempted to file the complaint with the juvenile court. The court refused to accept the complaint for filing as the case should have been filed with the Child Support Enforcement Agency ("CSEA"). However, the CSEA would not accept the complaint because of Veale's non-resident status. In an effort to stall his client's inquiries, respondent created a false document by superimposing an official time stamp from another document onto the rejected complaint, adding a fictitious case number, and "assigning" an actual Summit County judge to the action. Respondent then faxed the fabricated document to his client.

{¶ 5} After receiving the fraudulent "complaint", Veale called the Summit County Juvenile Court to determine if a complaint had been filed. The clerk informed her that the court was not issuing numbers in the range of the case number appearing on the "complaint".

{¶ 6} Respondent perpetuated his dishonest conduct by falsely indicating to Veale that a hearing on her paternity action had been scheduled for November 4, 1993. Continuing to mislead his client, respondent called Veale in late October 1993 to confirm the fictitious hearing date. Still suspicious, Veale nonetheless purchased an airline ticket in anticipation of attending the hearing. Further deceiving his client, respondent prepared and sent to Veale what appeared to be an official request for production of documents.

{¶ 7} Shortly before the fictitious hearing date, respondent falsely represented to Veale that the November 4 court date, which had never been scheduled, had been canceled due to a scheduling error by the court. After this final blatant misrepresentation, respondent sent a letter to Veale terminating the attorney-client relationship and returning the retainer fee. Nowhere in the letter did respondent acknowledge his failure to file the action with the juvenile court or his subsequent pattern of misrepresentation to her.

{¶ 8} The hearing panel found that despite the testimony of the complaining witness and respondent's stipulations that he had violated all the Disciplinary Rules charged in the complaint, the evidence supported only a violation of DR 6-101(A)(2) for "handling" a legal matter without preparation adequate in the circumstances and a violation of DR 1-102(A)(4) for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

{¶ 9} In recommending a public reprimand for this misconduct, the hearing panel considered that respondent did not create financial hardship or pecuniary loss to Veale, that Veale was receiving $450 per month which respondent had negotiated, that he had practiced for thirty years with no history of disciplinary violations, and that he had been candid with the panel. The panel also considered that respondent had been suffering personal problems and upheaval in his office, both of which have since been corrected. The board adopted the panel's findings and recommended that respondent receive a public reprimand.

_____

*Geoffrey Stern*, Disciplinary Counsel, and *Alvin E. Mathews*, Assistant Disciplinary Counsel, for relator.

*Albert E. Fowerbaugh, pro se.*

_____

**MOYER, C.J.**

{¶ 10} This disciplinary case presents the court with an opportunity to provide guidance to certified grievance committees and the Board of Commissioners on Grievances and Discipline in all cases where an attorney engages in a pattern of conduct of misleading or lying to a client concerning a legal matter entrusted to the lawyer by the client. DR 1-102(A)(4) is straight forward and unambiguous. It states that a "lawyer shall not *** [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

{¶ 11} In discipline cases where an attorney has deceived a client, we have imposed a varying range of sanctions. In *Disciplinary Counsel v. Gwyn* (1994), 71 Ohio St.3d 8, 640 N.E.2d 1141, we publicly reprimanded an attorney for violating DR 6-101(A)(3) and 1-102(A)(4). In *Gwyn*, the respondent told his client that he had filed a lawsuit when in fact he had not filed the suit. The misrepresentations continued for two years. The respondent even fabricated pleadings falsely indicating that the case had been filed and dismissed. During that time, however, the respondent made other efforts to resolve the matter, including research into the legal issues involved in the case and attempts at discovery. Because of respondent's forthright testimony and numerous character witnesses, the court adopted the board's recommendation that respondent receive only a public reprimand. *Gwyn*, 71 Ohio St.3d at 10, 640 N.E.2d at 1142.

{¶ 12} In *Toledo Bar Assn. v. Dzienny* (1995), 72 Ohio St.3d 173, 648 N.E.2d 499, the respondent failed to file a medical malpractice lawsuit before the statute of limitations expired. Converting an act of malpractice into a violation of the Code of Professional Responsibility, respondent concealed his malpractice and continually misled his clients regarding the status of the lawsuit. The Board of

Commissioners on Grievances and Discipline found that the respondent had violated both the DR 6-102(A) and 1-102(A)(4), and recommended a six-month suspension that should be stayed. In rejecting respondent's plea for a public reprimand the court adopted the board's recommendation, stating that "[i]n light of the significant and lengthy deception of his clients, the respondent's argument that he deserves the lightest punishment possible under the rules is without merit." *Dzienny*, 72 Ohio St.3d at 175, 648 N.E.2d at 501, (Moyer, C.J., dissenting to the stay of the suspension).

{¶ 13} More recently we moved closer to the rule we announce today. In *Lake Cty. Bar Assn. v. Speros* (1995), 73 Ohio St.3d 101, 104, 652 N.E.2d 681, 683, we stated that "[d]ishonesty toward a client, whose interests are the attorney's duty to protect, is reprehensible. And, as we continue to see such violations of DR 1-102(A)(4), we recognize that this misconduct may hereafter require more severe discipline than we have previously imposed." Respondent was suspended from the practice of law in Ohio for six months.

{¶ 14} We express our growing concern with the increase in the discipline matters referred to us by the Board of Commissioners on Grievances and Discipline in which members of the bar of Ohio have deceived their clients or a court. A lawyer who engages in a material misrepresentation to a court or a pattern of dishonesty with a client violates at a minimum, the lawyer's oath of office that he or she will not "knowingly employ or countenance any *** deception, falsehood or fraud." Gov. Bar R.I(8)(A). Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer. We cannot expect citizens to trust that lawyers are honest if we have not yet sanctioned those who are not. Therefore, recognizing that the sanctions that we have imposed heretofore against lawyers who have violated DR 1-102(A)(4) are apparently not causing some lawyers to understand the importance of being honest with courts and clients, we announce a rule that will be applied to this case and future cases. When an attorney engages in a course of conduct resulting in a finding that the attorney has violated DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time.

{¶ 15} In the instant case, respondent engaged in a continuing course of deceit and misrepresentation designed to cover up his inaction on an entrusted legal matter. After lying to his client about proceeding with the case, respondent fabricated documents to perpetuate the fraud until he finally withdrew from the case. Respondent argues that his cover-up was merely an effort to stall his client's inquiries, and that his reliance on misinformation that he received from the juvenile

court necessitated the deception. We find these arguments to be spurious. Rather than accepting personal responsibility for his actions, respondent attempts to justify his conduct. Furthermore, respondent's protracted deception would not have been uncovered if his client had not taken it upon herself to verify her own attorney's actions.

{¶ 16} While we are cognizant of the pressures and demands, both professional and personal, that attorneys may face, this court "cannot permit attorneys who lie either to their clients or to the court to continue practicing law without interruption." *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 655 N.E.2d 1299. Therefore, we hold that when an attorney engages in a course of conduct that violates DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time.

{¶ 17} In spite of respondent's stipulation that he violated DR 6-101(A)(2), 6-101(A)(3), 1-102(A)(4), and 1-102(A)(6), the hearing panel and the board dismissed both the 6-101(A)(3) and 1-102(A)(6) charges because they believed these charges had not been proven by clear and convincing evidence. We defer to the board and will not disturb that finding. However, we remind the board that an attorney's conduct may constitute neglect when the attorney fails "'to advance a client matter for which he has been retained. Neglect is different from negligence and usually requires a pattern of disregarding obligations or repeated omissions by an attorney.' [Citation omitted]." *Dzienny*, 72 Ohio St.3d at 176, 648 N.E.2d at 502.

{¶ 18} For the foregoing reasons, we order that respondent be suspended from the practice of law in the state of Ohio for six months. Costs taxed to respondent.

*Judgment accordingly.*

WRIGHT, F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment only.

PFEIFER, J., dissents and would suspend respondent for six months, stayed.

_____

**Alice Robie Resnick, J., concurring in judgment.**

{¶ 19} For the reasons set forth in my dissenting opinion in *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 655 N.E.2d 1299, I concur in judgment only. It is the responsibility of this court to give guidance as to what conduct constitutes a violation of the Disciplinary Rules. It is not the province of this court to use syllabus law to mandate a particular sanction once a violation has been found. The sanction in each individual's case should be determined based upon the unique facts and circumstances of that case.

DOUGLAS, J., concurs in the foregoing opinion.

_____