DISCIPLINARY COUNSEL *v.* KARRIS.

[Cite as *Disciplinary Counsel v. Karris,* 129 Ohio St.3d 499, 2011-Ohio-4243.]

*Attorney misconduct, including engaging in conduct involving dishonesty, fraud,*
*deceit, or misrepresentation — Six-month suspension.*

(No. 2010-1898 — Submitted March 1, 2011 — Decided September 1, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 09-102.

_____

**Per Curiam**.

{¶ 1} Respondent, Tom John Karris of Strongsville, Ohio, Attorney Registration No. 0033659, was admitted to the practice of law in Ohio in 1982.

{¶ 2} On December 7, 2009, relator, Disciplinary Counsel, filed a two-count complaint alleging that respondent had committed professional misconduct by improperly notarizing signatures on four documents and falsely testifying about it during a deposition.

{¶ 3} The board found clear and convincing evidence that respondent had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct that adversely reflected on his fitness to practice law by improperly notarizing documents on three separate occasions. Based upon this misconduct, the board recommends that we publicly reprimand respondent. Finding that the record contains insufficient evidence to clearly and convincingly prove that respondent made false statements to a tribunal, however, the board recommends that we dismiss count two of relator's complaint.

{¶ 4} Relator objects to the board's recommended sanction. Citing respondent's multiple fraudulent notarizations, the presence of several aggravating factors, and the absence of substantial mitigating evidence, relator

asks that we suspend respondent from the practice of law for six months. We sustain relator's objection and suspend respondent from the practice of law in Ohio for six months.

**Misconduct**

*Count One*

{¶ 5} The board found that in 1999, one of respondent's clients began to lend money to another man ("borrower") to use in his catering business. In 2000, the client engaged respondent to prepare documents to protect his investment, and respondent prepared a promissory note, secured by a mortgage on property that the borrower and his wife owned in Columbia Station, Ohio, as well as a quitclaim deed on that property to be held in escrow.

{¶ 6} On January 26, 2000, the promissory note, in the principal amount of $35,000, was purportedly executed by the borrower and his wife and then witnessed and notarized by respondent. On January 31, 2000, the borrower and his wife purportedly executed, and respondent notarized, the mortgage and quitclaim deeds. The mortgage deed was filed with the Lorain County recorder on February 10, 2000.

{¶ 7} Although it does not appear that the borrower was making any payments on the loans, the client continued to lend him additional funds. On January 30, 2001, the borrower and his wife purportedly executed a land contract for the Columbia Station property, identifying themselves as purchasers and the client as the vendor. Respondent notarized the signatures and then forwarded the land contract and quitclaim deed to the Lorain County Recorder for filing, but the instruments were returned due to pending litigation against the real property. The quitclaim deed was eventually recorded on August 28, 2002.

{¶ 8} At the hearing, the panel heard conflicting testimony regarding the execution of the promissory note, mortgage deed, quitclaim deed, and land contract prepared by respondent. Both the borrower and his wife, who had

divorced in 2003, testified that the wife had not signed any of the documents prepared and notarized by respondent. The borrower testified that he had signed his wife's name to those instruments, although he had previously executed an affidavit in another legal proceeding stating that both he and his wife had signed the quitclaim deed and the mortgage. Respondent testified that the borrower's wife had signed the instruments in his presence. Another client of respondent's, who was also the husband of the first client's niece, testified that he had been present when the borrower and his wife signed the instruments. Although respondent's secretary purportedly witnessed the signing of the documents, she did not testify at the disciplinary proceeding.

{¶ 9} Rebecca Barrett, a forensic document examiner for the Ohio Bureau of Criminal Identification and Investigation, testified that the signatures purporting to be that of the borrower's wife on the instruments in question were not, in fact, her signatures. Based upon her analysis of the documents, she testified that there is "a high degree of certainty" that the signatures are in the borrower's hand.

{¶ 10} On these facts, the board found that respondent had violated DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt these findings of fact and misconduct.

*Count Two*

{¶ 11} As a third-party defendant in an action brought by his client against the borrower, respondent was deposed in 2007. At that time, he testified that the instruments in question had been signed in his presence by someone purporting to be the borrower's wife and that he had not requested identification from the woman, because his client, the husband of his client's niece, and the borrower had indicated that she was the borrower's wife.

{¶ 12} The board acknowledged that respondent's 2007 deposition testimony "may not have been shown to be true based upon the forensic evidence" that the borrower's wife had not signed the instruments. But the board found that given the passage of time and considerable variation in the witness testimony regarding the execution of the instruments in question, "[r]espondent may well have believed that the events transpired as he related them when he gave his deposition testimony in 2007." Therefore, the board recommends that we dismiss count two based upon the absence of clear and convincing evidence that respondent committed the alleged violations. Neither party objects to this recommendation. We agree that the record does not contain clear and convincing evidence to support the misconduct charged in count two of relator's complaint and therefore dismiss that count.

**Sanction**

{¶ 13} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 14} As aggravating factors, the board found that respondent had engaged in a pattern of misconduct involving multiple offenses, as he notarized the purported signature of the borrower's wife on three separate occasions. See BCGD Proc.Reg. 10(B)(1)(c) and (d). Also, although respondent agreed to settle the borrower's third-party claims against him for $5,000, he paid only $400 and then refused to pay anything more. Respondent also refused to acknowledge the

wrongful nature of his conduct, insisting that he had properly notarized the documents. See BCGD Proc.Reg. 10(B)(1)(g). As mitigating factors, the board found that respondent did not have a prior disciplinary record and had submitted evidence of his good character, including letters from attorneys Carol Shockley and Brian M. Richter, as well as the testimony of Medina County Common Pleas Judge James L. Kimbler and Medina County Prosecuting Attorney Dean Holman, attesting to his integrity, excellent character, and good reputation. See BCGD Proc.Reg. 10(B)(2)(a) and (e).

{¶ 15} Relator sought a one-year suspension for respondent's misconduct. Respondent sought dismissal of both counts of relator's complaint.

{¶ 16} Generally, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law. See, e.g., *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 13; and *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus. However, citing *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, and *Cleveland Bar Assn. v. Russell*, 114 Ohio St.3d 171, 2007-Ohio-3603, 870 N.E.2d 1164, the board recommends that we publicly reprimand respondent. Relator objects to this recommendation, arguing that the cases cited by the board are factually distinguishable from the facts of this case and that a six-month suspension is commensurate with respondent's misconduct and our precedent.

{¶ 17} In *Dougherty*, an attorney violated DR 1-102(A)(4) and (6) by notarizing a purported affiant's signature on a single document without having actually witnessed the signature. *Dougherty* at ¶ 4. Although the attorney's conduct involved dishonesty, fraud, deceit, or misrepresentation, we rejected relator's argument that an 18-month suspension with 12 months stayed was the appropriate sanction. Id. at ¶ 10, 17. Instead, citing the absence of any evidence that the attorney had engaged in a course of conduct designed to deceive and the

presence of mitigating evidence that included the attorney's lack of a prior disciplinary record, her acknowledgment of her misconduct, her sincere apology, and her cooperation in the disciplinary proceedings, we issued a public reprimand. Id. at ¶ 11, 17.

{¶ 18} Similarly, in *Russell*, an attorney notarized the signatures on two deeds transferring real property to his client without having actually witnessed the grantors' signatures. *Russell* at ¶ 7, 9. In imposing the recommended sanction of a public reprimand, we observed that Russell (1) had committed the same misconduct as Dougherty, (2) had no prior disciplinary offenses in more than 40 years of practice, (3) had been cooperative and contrite throughout the disciplinary process, (4) had paid to rectify the consequences of his misconduct, and (5) had established his good character and reputation apart from this single lapse of judgment. Id. at ¶ 11-12.

{¶ 19} In contrast to Dougherty and Russell, who engaged in single acts of misconduct by improperly notarizing one or two documents on a single occasion, respondent improperly notarized documents on three separate occasions. He also steadfastly refused to acknowledge the wrongful nature of his conduct, maintaining throughout the disciplinary proceeding that the borrower's wife had appeared before him and signed the documents — even when confronted with forensic evidence that the wife did not sign the documents and that there was a high degree of certainty that the borrower had forged his wife's signature. In light of these aggravating factors, which were not present in *Dougherty* or *Russell*, we decline to depart from the general rule that offenses involving dishonesty, fraud, deceit, or misrepresentation require an actual suspension from the practice of law.

{¶ 20} Accordingly, Tom John Karris is suspended from the practice of law in Ohio for six months. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents and would suspend respondent for six months, all stayed.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Mary L. Cibella, for respondent.

_____