**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Ferfolia*, **Slip Opinion No. 2022-Ohio-4220.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4220

DISCIPLINARY COUNSEL *v.* FERFOLIA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Ferfolia*, Slip Opinion No. 2022-Ohio-4220.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed one-year suspension.*

(No. 2022-0715—Submitted August 2, 2022—Decided November 30, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-028.

_____

**Per Curiam.**

{¶ 1} Respondent, Donald Bryan Ferfolia Jr., of Brecksville, Ohio, Attorney Registration No. 0082049, was admitted to the practice of law in Ohio in 2007. In an October 2021 complaint, relator, disciplinary counsel, charged Ferfolia with five ethical violations arising from his representation of a husband and wife seeking long-term-care Medicaid benefits for the husband. The complaint alleged

that, among other things, Ferfolia failed to timely take actions necessary to obtain the desired Medicaid benefits, failed to comply with his clients' reasonable requests for information, falsely led them to believe that he had filed a claim on their behalf with his professional-liability-insurance carrier, and failed to cooperate in the ensuing disciplinary investigation.

{¶ 2} The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors. At a hearing conducted by a three-member panel of the Board of Professional Conduct, the parties recommended that we impose a conditionally stayed one-year suspension for Ferfolia's misconduct. The board issued a report finding that Ferfolia committed the charged misconduct. It also adopted the parties' stipulated aggravating and mitigating factors and their recommended sanction—with additional conditions on the stay. No objections have been filed.

{¶ 3} After thoroughly reviewing the record, we adopt the board's findings of misconduct and its recommended sanction.

**Misconduct**

*The Schnurr Medicaid Application*

{¶ 4} In January 2019, Charles Schnurr resided in a Cleveland-area nursing home; his wife, Rita, lived in a Cleveland suburb with their adult daughter, Janice. Around that time, Rita learned that Charles had nearly exhausted his insurance coverage and that they would need to apply for long-term-care Medicaid to cover Charles's ongoing nursing-home expenses.

{¶ 5} Ferfolia was a licensed funeral director and vice-president of the board of the Ferfolia Funeral Home in Sagamore Hills, Ohio. He also practiced law part-time. Rita and Charles Schnurr knew Ferfolia through their church and the funeral home. Based on their understanding that Ferfolia was an "elder law" attorney, the Schnurrs hired him to apply for Medicaid benefits on Charles's behalf. They did not sign a fee agreement, and Ferfolia did not charge them any fee.

**{¶ 6}** In March 2019, Ferfolia submitted an application for long-term-care Medicaid to the Ohio Department of Job & Family Services ("ODJFS"), designating himself as Charles's authorized representative. The agency denied that application in September 2019 on the ground that Ferfolia had failed to timely provide information regarding Charles's income. Ferfolia appealed, and a hearing officer reopened the application upon finding that the information had been provided but that the ODJFS web portal had directed the documents to the wrong county.

**{¶ 7}** The parties stipulated that in 2019, an applicant had to have a monthly income of $2,313 or less to qualify for long-term-care Medicaid. At the time of his application, Charles's monthly income was $3,263. In an October 2019 email, Ferfolia informed the nursing home that Charles's income was about $3,000 and erroneously stated that that income was "under the [Medicaid] income threshold."

**{¶ 8}** On December 10, 2019, ODJFS informed Ferfolia that he needed to submit additional documents in support of Charles's Medicaid application no later than December 23. That correspondence further stated, "If your gross income for 2019 is more than $2313 you may be required to open a Qualified Income Trust." Ferfolia did not submit the requested documents to ODJFS before the deadline or take any other action to confirm Charles's Medicaid eligibility, nor did he take any steps to open a qualified-income trust on Charles's behalf. Over the following months, Ferfolia failed to respond to numerous communications from Rita, Janice, and Megan Marzola, the nursing home's Medicaid manager, inquiring about the status of Charles's Medicaid application.

**{¶ 9}** In early February 2020, Rita and Janice informed Marzola that they had not heard from Ferfolia and that they needed to submit requested bank statements to ODJFS. Marzola retrieved the documents from Rita and Janice and submitted them to ODJFS. Later that month, an ODJFS representative informed Marzola that Ferfolia had failed to establish the qualified-income trust that was

necessary to establish Charles's eligibility for long-term-care Medicaid. On February 12, nursing-home representatives helped the Schnurrs establish a qualified-income trust for Charles. One week later, ODJFS approved Charles's Medicaid application with an effective date of February 1, 2020, rather than the March 22, 2019 application date.

{¶ 10} The parties stipulated that as a result of Ferfolia's failure to recognize the need for and to timely establish a qualified-income trust for Charles, the Schnurrs had incurred over $87,000 in nursing-home expenses that otherwise would have been covered by Medicaid. After Charles died in January 2021, Rita and Janice used his life-insurance proceeds and government-stimulus funds to pay those expenses in full. Although Rita asked Ferfolia to return the paperwork she had given him during the course of his representation, he waited nearly two years to return those documents to her.

*The Schnurr Legal-Malpractice Claim*

{¶ 11} In May 2020, Rita and Charles Schnurr hired attorney Drew Barnholtz to pursue a legal-malpractice action against Ferfolia. Ferfolia told Barnholtz that he had professional-liability insurance, but he did not give Barnholtz the name of his carrier.

{¶ 12} In September 2020, Barnholtz sent Ferfolia an email stating that Ferfolia had failed to respond to numerous voicemail messages and emails from Barnholtz over the previous several weeks requesting information about the status and resolution of Ferfolia's insurance claim. Although Ferfolia had not filed a claim with his professional-liability carrier, he falsely implied in his reply to Barnholtz that he had submitted a claim.

{¶ 13} A week later, Marzola emailed Barnholtz, copying Ferfolia, to ask whether Ferfolia had received Barnholtz's request that he follow up with his insurance carrier. Ferfolia replied to Marzola and Barnholtz and once again falsely implied that he had filed an insurance claim.

4

{¶ 14} In December 2020, Barnholtz filed a legal-malpractice action against Ferfolia in the Summit County Court of Common Pleas. The complaint alleged that Ferfolia's failure to timely establish a qualified-income trust had delayed the approval of Charles's Medicaid application and caused the Schnurrs to incur over $87,000 in unreimbursed nursing-home expenses. Although the complaint was served on Ferfolia by certified mail, he did not file a timely answer or other responsive pleading. The court granted Barnholtz's motion for default judgment and, in June 2021, awarded the Schnurrs $87,000 in damages plus $21,750 in attorney fees. Ferfolia failed to appear for a scheduled debtor's examination in October 2021 but participated in a December 2021 examination to avoid being found in contempt of court. Following that examination, Ferfolia informed Barnholtz of his financial means and plans to satisfy the judgment. At his disciplinary hearing, Ferfolia testified that he had made three payments totaling $13,750 but that he still owed the Schnurrs $95,000. He stated that he had $6,000 available and that he was in the process of liquidating an individual retirement account valued at more than $100,000 to satisfy the judgment.

*Relator's Investigation of the Schnurrs' Grievance*

{¶ 15} In October 2020, the Schnurrs filed a grievance against Ferfolia with relator. Ferfolia failed to respond to relator's first two letters of inquiry regarding the grievance. Consequently, relator's investigator hand-delivered a third letter of inquiry requiring him to respond by May 3, 2021, or to appear at a May 20 deposition. During a May 6 telephone conversation with relator, Ferfolia claimed that he had emailed his partial response to the grievance earlier that week. When relator informed Ferfolia that it had not received such an email, Ferfolia assured relator that he would resend it immediately, but he failed to do so.

{¶ 16} Ferfolia appeared for his May 20 deposition by videoconference. He once again claimed to have emailed relator a Microsoft Word document containing his partial response to the grievance shortly before May 6. Immediately following

the deposition, relator emailed Ferfolia to request a copy of his professional-liability-insurance policy and other documents. On the day his response was due, Ferfolia sent relator an email stating that he was working on his response and that he would provide it "shortly." About a week later, he sent another email, stating that he would provide the requested information "ASAP." But he never provided the requested information.

*Rule Violations*

**{¶ 17}** The parties stipulated and the board found that Ferfolia's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation), 8.1(b) (prohibiting a lawyer from failing to disclose a material fact or knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

**Sanction**

**{¶ 18}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 19}** The parties stipulated and the board found that three aggravating factors are present—Ferfolia had a dishonest or selfish motive, committed multiple offenses, and caused harm to Rita and Janice, who were vulnerable because they were disabled and lived on a fixed monthly income. *See* Gov.Bar R. V(13)(B)(2), (4), and (8).

**{¶ 20}** As for mitigating factors, the parties stipulated and the board found that Ferfolia has no prior discipline and had exhibited full and free disclosure to the board and a cooperative attitude toward the disciplinary proceedings (after initially failing to cooperate) and submitted evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (4), and (5).

**{¶ 21}** At his disciplinary hearing, Ferfolia testified that his mother had been sick around the time that he neglected the Schnurrs' legal matter and that she had been hospitalized for 90 days before her death on February 15, 2020. He explained that when the COVID-19 lockdown occurred just one month later, he "put [his] head in the sand." The board found that Ferfolia was very remorseful about his misconduct, and it noted that when asked what assurance he could give that he would not repeat his misconduct, he testified that the disciplinary process had served as a "wake-up call" and that he never wanted to be in this position again. Although relator had suggested that Ferfolia seek an evaluation conducted by the Ohio Lawyers Assistance Program ("OLAP"), he declined to do so, opting instead to pursue counseling through his church.

**{¶ 22}** The parties suggested that the appropriate sanction for Ferfolia's misconduct is a one-year suspension, stayed in its entirety on the condition that he make restitution equal to the remaining balance of the judgment awarded in the Schnurrs' malpractice case within 30 days of this court's final disciplinary order.

**{¶ 23}** In determining the appropriate sanction, the board considered our precedent, including four cases cited by relator. In three of those cases, we imposed conditionally stayed one-year suspensions on attorneys who, like Ferfolia, had neglected a single client matter, failed to reasonably communicate with a client, and either lied to a client in an effort to conceal their neglect or failed to fully cooperate in the ensuing disciplinary proceedings—or both. *See, e.g.*, *Cleveland Metro. Bar Assn. v. Mariotti*, 158 Ohio St.3d 522, 2019-Ohio-5191, 145 N.E.3d 286; *Disciplinary Counsel v. Fumich*, 116 Ohio St.3d 257, 2007-Ohio-6040, 878

N.E.2d 6; *Disciplinary Counsel v. Farris*, 157 Ohio St.3d 527, 2019-Ohio-4810, 138 N.E.3d 1134.

{¶ 24} In the fourth case, *Dayton Bar Assn. v. Sullivan*, 158 Ohio St.3d 423, 2020-Ohio-124, 144 N.E.3d 401, we imposed a two-year suspension, with the second year conditionally stayed, on an attorney who had neglected *three* client matters, lied to those clients about filing documents in their cases in an attempt to conceal his inaction, failed to inform them that he did not carry professional-liability insurance, and failed to cooperate in the disciplinary investigations. Like Ferfolia, Sullivan acted with a dishonest or selfish motive and engaged in multiple offenses. In addition, Sullivan failed to refund unearned or unused legal and filing fees and failed to cooperate in the relator's investigation until *after* the relator filed its complaint against him. But Sullivan had no prior discipline, and three close family members of his had died within several months of one another around the time of his misconduct. Conditions of the partially stayed suspension in *Sullivan* included requirements that he pay restitution, submit to an OLAP assessment, comply with any resulting recommendations, and refrain from further misconduct.

{¶ 25} The board also considered *Cincinnati Bar Assn. v. Burgess*, 165 Ohio St.3d 274, 2021-Ohio-2187, 178 N.E.3d 476. Burgess failed to seek temporary support orders on behalf of a domestic-relations client, failed to appear for a scheduled status conference and trial in that matter, and falsely represented that he had delivered the client's file to his new counsel. He also failed to complete the agreed work in the limited-scope representation of another client, to comply with that client's reasonable requests for information, and to withdraw from the representation as required by local rule. In the presence of aggravating and mitigating factors similar to those present here—and on Burgess's suggestion that he had been overwhelmed by his solo practice and personal issues—we imposed a one-year suspension for Burgess's misconduct but stayed the entire suspension on

conditions, including that he submit to an OLAP evaluation, comply with any resulting treatment recommendations, and refrain from further misconduct.

{¶ 26} Based on the facts of this case and on the authority of *Mariotti*, *Fumich*, *Farris*, *Sullivan*, and *Burgess*, the board agreed with the parties' recommendation that Ferfolia be suspended from the practice of law for one year and that the entire suspension be conditionally stayed. But in addition to the parties' stipulation that Ferfolia make restitution to the Schnurrs, the board recommends that Ferfolia be required to refrain from further misconduct and that like Sullivan and Burgess, he be required to submit to an OLAP evaluation and enter into an OLAP contract if OLAP determines that treatment is necessary. Furthermore, the board specified that the OLAP evaluation should occur within 30 days of this court's order.

{¶ 27} This court has held that generally, attorney misconduct "involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 13, and *Disciplinary Counsel v. Fowerbaugh,* 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. However, we have stated that an exception to this rule may be justified when "an abundance of mitigating evidence" is shown. *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000). We find that the relevant mitigating factors—namely, Ferfolia's clean disciplinary record, his eventual full and free disclosure and cooperative attitude toward the disciplinary proceedings, his positive character evidence, and his genuine remorse—warrant such an exception here.

{¶ 28} After independently reviewing the record and considering the totality of Ferfolia's misconduct, the relevant aggravating and mitigating factors,

and our precedent, we believe that a one-year suspension, stayed in its entirety on the conditions recommended by the board, is the appropriate sanction in this case.

**Conclusion**

**{¶ 29}** Accordingly, Donald Bryan Ferfolia Jr. is suspended from the practice of law in Ohio for one year with the suspension stayed in its entirety on the conditions that he commit no further misconduct and that within 30 days, he pay the balance of the judgment entered against him in *Schnurr v. Ferfolia*, Summit C.P. No. CV-2020-12-3358, and submit to an OLAP evaluation. If Ferfolia violates any condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. If OLAP determines that treatment is necessary, the stay shall also be conditioned on Ferfolia's entering into an OLAP contract for a duration to be determined by OLAP and his complying with all treatment recommendations. Costs are taxed to Ferfolia.

*Judgment accordingly.*

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

**{¶ 30}** This court in a series of cases established a presumption of actual suspension from the practice of law when attorney misconduct "involv[es] dishonesty, fraud, deceit, or misrepresentation." *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 13, and *Disciplinary Counsel v. Fowerbaugh,* 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. The presumptive sanction of an actual suspension from the practice of law can be rebutted when there is "an abundance of mitigating

evidence." *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000).

{¶ 31} I agree that respondent, Donald Bryan Ferfolia, committed the misconduct as alleged in the complaint and found by the majority. But in my view, there is not an abundance of mitigating evidence that outweighs the misconduct of Ferfolia—misleading vulnerable victims who suffered actual financial harm and deceit about filing a claim with his professional-liability-insurance carrier. Therefore, I would impose an actual suspension from the practice of law for one year with six months stayed on the conditions that he commit no further misconduct and that within 30 days, he pay the balance of the judgment entered against him in *Schnurr v. Ferfolia*, Summit C.P. No. CV-2020-12-3358, and submit to an Ohio Lawyers Assistance Program ("OLAP") evaluation. Because the majority does not impose an actual suspension, I dissent.

{¶ 32} Charles Schnurr was residing in a nursing home and needed to apply for long-term-care Medicaid to cover his ongoing nursing-home expenses. Charles's wife, Rita, and their adult daughter, Janice Schnurr ("the Schnurrs") hired Ferfolia to obtain long-term-care Medicaid on Charles's behalf.

{¶ 33} On March 22, 2019, Ferfolia submitted an application for long-term-care Medicaid to the Ohio Department of Job & Family Services ("ODJFS"). However, he failed to timely submit documents requested by ODJFS or take steps to confirm Charles's Medicaid eligibility. Ferfolia also failed to communicate with the Schnurrs and the nursing home's Medicaid manager about the status of Charles's Medicaid application.

{¶ 34} The nursing home eventually assisted the Schnurrs with the application, and the application was approved. However, because of Ferfolia's misconduct, the effective date of the Medicaid benefits was February 1, 2020, instead of March 22, 2019. As a direct result of his misconduct, the Schnurrs

incurred over $87,000 in nursing-home expenses that otherwise would have been covered by Medicaid.

**{¶ 35}** Charles died in January 2021. The Schnurrs, who are disabled and live on a fixed monthly income, had to pay the outstanding nursing-home expenses using Charles's life-insurance proceeds and government-stimulus funds.

**{¶ 36}** In May 2020, the Schnurrs hired attorney Drew Barnholtz to pursue a legal-malpractice action against Ferfolia. Ferfolia told Barnholtz that he had professional-liability insurance, but he did not provide Barnholtz with the name of his carrier.

**{¶ 37}** Ferfolia did not submit an insurance claim to his carrier. Yet on two separate occasions, he falsely implied to Barnholtz that he had submitted a claim.

**{¶ 38}** Barnholtz filed a legal-malpractice action against Ferfolia in the Summit County Court of Common Pleas. Although Ferfolia was served with the complaint by certified mail, he did not file a timely answer or other responsive pleading. The court granted Barnholtz's motion for default judgment and subsequently awarded the Schnurrs $87,000 in damages plus $21,750 in attorney fees.

**{¶ 39}** At the time of his disciplinary hearing, Ferfolia had made three payments totaling $13,750 but still owed the Schnurrs $95,000.

**{¶ 40}** This court has held that an attorney who engages in conduct involving dishonesty, fraud, deceit, or misrepresentation generally will serve an actual suspension from the practice of law. *Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, at ¶ 16, citing *Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, at ¶ 13, and *Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237, at syllabus. "[A]n actual suspension is particularly appropriate when an attorney's dishonesty has been directed toward a client." *Disciplinary Counsel v. Stollings*, 111 Ohio St.3d 155, 2006-Ohio-5345, 855 N.E.2d 479, ¶ 13. This court has explained:

> A lawyer who engages in a material misrepresentation to a court or a pattern of dishonesty with a client violates, at a minimum, the lawyer's oath of office that he or she will not "knowingly * * * employ or countenance any * * * deception, falsehood, or fraud." Gov.Bar R. I(8)(A). Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer.

(Ellipses sic.) *Fowerbaugh* at 190.

{¶ 41} *Fowerbaugh* provides the rule of decision in this case, and it holds that the presumptive sanction for misrepresentations to clients and tribunals is an actual suspension from the practice of law. The appropriate analysis when this court has established a presumptive sanction for certain misconduct is to "begin[ ] with the presumptive sanction" and determine whether there is any reason not to impose it. *Cleveland Bar Assn. v. Harris*, 96 Ohio St.3d 138, 2002-Ohio-2988, 772 N.E.2d 621, ¶ 9 (Cook, J., dissenting). Only when there is "an abundance of mitigating evidence" shown, *Markijohn,* 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, at ¶ 8, citing *Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052, is the imposition of a sanction less severe than the one presumed under our caselaw warranted. *See Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 18.

{¶ 42} The majority finds in mitigation that Ferfolia has "no prior discipline and had exhibited full and free disclosure to the board and a cooperative attitude toward the disciplinary proceedings (after initially failing to cooperate) and submitted evidence of his good character and reputation." Majority opinion, ¶ 20. The majority then concludes that the mitigating factors rebut the presumption of an actual suspension from the practice of law. I disagree.

**{¶ 43}** The mitigating factors should be considered, but they are not enough in this case to overcome the presumption of an actual suspension. When imposing sanctions for attorney misconduct, we consider the sanctions previously imposed in similar cases. *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Here, our caselaw supports the imposition of an actual suspension from the practice of law.

**{¶ 44}** In *Toledo Bar Assn. v. Hickman*, the attorney falsely advised a couple that he had filed a wrongful-death action for them and then lied repeatedly about how the case was progressing. 107 Ohio St.3d 296, 2005-Ohio-6513, 839 N.E.2d 24. In addition, Hickman previously dismissed the couple's son's personal-injury action without permission and then lied about the circumstances of the dismissal. The statute of limitations lapsed on both claims; however, a portion of the clients' losses were covered by Hickman's malpractice insurance.

**{¶ 45}** In mitigation, we found that Hickman had no prior disciplinary offenses and had cooperated in the disciplinary proceedings, expressed remorse for his misconduct, submitted evidence of his good character and reputation, and acknowledged the wrongfulness of his conduct. *Id.* at ¶ 10-11. We determined that this mitigation was neither significantly extenuating nor unusual and concluded that an actual suspension was required. *Id*. at ¶ 13-15. We imposed a one-year suspension with six months conditionally stayed. *Id.* at ¶ 15.

**{¶ 46}** In *Disciplinary Counsel v. Keller*, the attorney was retained to pursue a personal-injury claim. 110 Ohio St.3d 240, 2006-Ohio-4354, 852 N.E.2d 1195. Keller falsely informed the client that a complaint had been filed and that he was negotiating with the tortfeasor's insurance carrier. During the representation, he also falsely informed the client that he had received an offer to settle from the tortfeasor's insurer.

**{¶ 47}** The client eventually retained new counsel, who discovered that no lawsuit had been filed and that the two-year statute of limitations had run. The

client sued Keller for malpractice and obtained a default judgment against him in the amount of $102,800, which Keller had not satisfied by the time we issued our decision. *See id.* at ¶ 14.

{¶ 48} We found in mitigation that Keller had no prior disciplinary record and that there was evidence of good character, chemical dependency, genuine remorse, and personal hardships—including the murder of his daughter, the subsequent trial of her killer, and a difficult divorce—at the time of the misconduct. *Id.* at ¶ 10.

{¶ 49} We acknowledged Keller's mitigating evidence but found that his "attempts to conceal his neglect and his failure to remedy the harm that was caused warrant[ed] an actual suspension." *Id.* at ¶ 13. Keller was suspended from the practice of law for two years with 18 months stayed on conditions. *Id.* at ¶ 14.

{¶ 50} In *Disciplinary Counsel v. Johnson*, 122 Ohio St.3d 293, 2009-Ohio-3501, 910 N.E.2d 1034, the attorney neglected a client's personal-injury matter and falsely advised the client that the matter was moving forward and that she would receive the settlement proceeds by a specified date. The statute of limitations eventually lapsed, leaving the client with no remedy against the tortfeasor. Johnson then refused to meet with the client and stopped communicating with her completely. Although Johnson had professional-malpractice insurance, she did not report the potential claim to her carrier.

{¶ 51} In mitigation, Johnson had no prior discipline. *Id.* at ¶ 9. We noted Johnson's assertion that she had been deeply depressed due to the death of a close relative, but we determined that that evidence was not sufficient to establish the mitigating effect of mental disability. *Id.* We imposed a one-year suspension with six months conditionally stayed. *Id.* at ¶ 14.

{¶ 52} And in *Columbus Bar Assn. v. Roseman*, the attorney neglected a client's personal-injury case, resulting in the client's being barred from litigating his claim in court. 147 Ohio St.3d 317, 2016-Ohio-5085, 65 N.E.3d 713. During

the representation, Roseman was untruthful and deceitful in his communications with his client regarding why the client's case, which Roseman had dismissed without informing the client that he had done so, had not been refiled. The client later sued Roseman for malpractice and obtained a judgment for $135,000.

{¶ 53} We found as mitigating factors that Roseman had no prior discipline and had cooperated in the disciplinary proceedings. *Id.* at ¶ 11. We concluded that a one-year suspension from the practice of law, with six months stayed on conditions, was appropriate for Roseman's neglectful and dishonest behavior toward his client. *Id.* at ¶ 17.

{¶ 54} Our caselaw supports finding that Ferfolia's mitigating evidence, while favorable, does not overcome the presumption of an actual suspension from the practice of law. There is no compelling reason here to deviate from the presumption that dishonest conduct toward a vulnerable client who suffers actual financial harm requires an actual suspension. Ferfolia's neglect and dishonesty caused significant financial hardship to his vulnerable clients, who were disabled and lived on a fixed monthly income. Ferfolia has failed to remedy this harm, and an actual suspension for his misconduct is warranted.

{¶ 55} I recognize the favorable mitigating evidence that is present here, but in my view, it is insufficient to warrant an exception to the general rule that dishonest conduct on the part of an attorney warrants an actual suspension from the practice of law. *See Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, at ¶ 16. Therefore, I would suspend Ferfolia from the practice of law for one year with six months stayed on the conditions that he commit no further misconduct and that within 30 days, he pay the balance of the judgment entered against him in *Schnurr v. Ferfolia*, Summit C.P. No. CV-2020-12-3358, and submit to an OLAP evaluation.

{¶ 56} Because the majority does not impose an actual suspension, I dissent.

16

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle R. Bowman and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Donald B. Ferfolia Jr., pro se.

_____