**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
***Disciplinary Counsel v. Kaiser*, Slip Opinion No. 2024-Ohio-2788.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2788

DISCIPLINARY COUNSEL *v.* KAISER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Kaiser*, Slip Opinion No. 2024-Ohio-2788.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter)—Conditionally stayed one-year suspension.*

(No. 2024-0171—Submitted March 12, 2024—Decided July 25, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-017.

———————————

The per curiam opinion below was joined by FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Jo Ellen Kaiser, of Columbus, Ohio, Attorney Registration No. 0072449, was admitted to the practice of law in Ohio in 2000.

{¶ 2} In a June 2023 complaint, relator, disciplinary counsel, charged Kaiser with multiple violations of the Ohio Rules of Professional Conduct related to a single client matter. Among other things, relator alleged that Kaiser accepted the client's retainer and then failed to perform any work on the client's behalf, failed to deposit the retainer into her client trust account, failed to promptly refund the retainer upon the termination of her representation, and submitted false statements to relator during the ensuing disciplinary investigation.

{¶ 3} The parties submitted 16 stipulated exhibits, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct in November 2023. The panel heard testimony from Kaiser and the client involved in the complaint. Following the hearing, the panel unanimously dismissed one alleged rule violation. The panel later issued a report finding that Kaiser's conduct had violated four professional-conduct rules. The panel recommended that Kaiser be suspended from the practice of law for one year, fully stayed on the conditions that she complete six hours of continuing legal education ("CLE") focused on law-office management within 90 days of this court's order in this case and commit no further misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 4} After a thorough review of the record, we adopt the board's findings of misconduct and recommended sanction.

## MISCONDUCT

**{¶ 5}** In February 2022, Tina Preece hired Kaiser to represent her in a custody matter involving Preece's daughter and granddaughter. At that time, Preece paid Kaiser a $200 cash retainer. The only identifying information Kaiser obtained from Preece was her name and her daughter's last name. Kaiser did not request or obtain Preece's phone number, address, or email address. Instead of depositing the $200 payment into her client trust account, Kaiser wrote the name "Tina" on a file folder, clipped the cash to that folder, and put the folder into a desk drawer.

**{¶ 6}** According to Preece, she called Kaiser in March after receiving notice of an April 5 hearing in juvenile court. Although Preece left a voicemail message that included the juvenile-court case number, Kaiser never returned her call.

**{¶ 7}** Kaiser did not appear at the April 5 hearing. Later that month, Preece went to Kaiser's office and requested a refund of her $200 payment. Kaiser refused to refund the money despite not having performed any work for Preece. Preece's fiancé made a videorecording of a portion of that meeting, during which Kaiser (1) acknowledged that she had received $200 from Preece and (2) denied that she had received a call from Preece and then claimed that she had returned a call from Preece and suggested that Preece had failed to return her call.

**{¶ 8}** In August 2022, relator sent Kaiser a letter of inquiry regarding Preece's grievance, which disclosed the existence of a recording of the April meeting. A month later, in her written response to the letter of inquiry, Kaiser acknowledged Preece's allegations that she had spoken with Kaiser at Kaiser's office and that her subsequent calls to Kaiser had not been returned. Kaiser stated, however, that upon reviewing her appointment book and call logs and searching her computer, she found no record of "the name Tina Preece" and that she was unaware of "any communication from Ms. Preece for any representation by [her] office."

**{¶ 9}** In October 2022, relator sent Kaiser a second letter of inquiry, asking her several clarifying questions. Kaiser responded to those questions, stating that (1) she never represented Preece, (2) Preece did not pay her $200 or any other amount, and (3) Preece did not appear at her office in February 2022 to discuss legal representation.

**{¶ 10}** In December 2022, relator provided Kaiser with a copy of the videorecording of her April meeting with Preece. Relator asked Kaiser to review the video and explain her previous statements that she never represented Preece or received $200 from Preece. In response to that request, Kaiser suggested that because she was a defense attorney, she responded to relator's letters of inquiry by denying all the allegations, and she claimed that she needed additional information before she could "more fully answer [relator's] inquiries."

**{¶ 11}** The records for Kaiser's own phone, which were submitted as stipulated exhibits at her disciplinary hearing, confirmed that she received a 29-second call from Preece's phone number on March 16, 2022, and that the call was transferred to her voicemail inbox. The phone records also confirmed that Preece called Kaiser three times in April 2022 and that the calls lasted between 28 and 53 seconds.

**{¶ 12}** In her testimony before the hearing panel, Kaiser admitted that she never called Preece. Kaiser also reiterated that she had responded to relator's inquiries "very much like a defense attorney," "denying everything" and then waiting for relator to provide more information. She testified that there was nothing in relator's original letter—such as the name of the case or the case number—that would have allowed her to determine what she may have done for Preece. Kaiser eventually admitted in her testimony that her previous denials were false. She also testified that she refunded Preece's $200 payment within several months of her November 2023 disciplinary hearing.

{¶ 13} The board found that Kaiser's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter). We adopt the board's findings of misconduct.

## SANCTION

{¶ 14} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 15} The board found that seven aggravating factors are present in this case, including (1) a dishonest or selfish motive, (2) multiple offenses, (3) a lack of cooperation in the disciplinary process, (4) the submission of false evidence or statements or engagement in other deceptive practices during the disciplinary proceedings, (5) a refusal to acknowledge the wrongful nature of the misconduct, (6) harm to a vulnerable client—apparently occasioned by Kaiser's delay in refunding the $200 retainer, and (7) a failure to make timely and good-faith restitution. *See* Gov.Bar R. V(13)(B)(2), (4), (5), (6), (7), (8), and (9). As for mitigating factors, the board found that Kaiser had no disciplinary record and presented evidence of her good character and reputation in the form of letters from two attorneys familiar with her practice. *See* Gov.Bar R. V(13)(C)(1) and (5).

{¶ 16} During her disciplinary hearing, Kaiser testified that she was diagnosed with cancer in April 2022 and commenced a course of chemotherapy and radiation sometime after June 1, 2022. We note, however, that her misconduct began a couple months before her diagnosis and, with the exception of suggesting

that her treatment delayed her response to relator's initial inquiry, she has presented no evidence showing that her medical condition had any effect on her conduct in this case.

{¶ 17} In relator's posthearing brief, relator argued that Kaiser's misconduct warrants a conditionally stayed one-year suspension from the practice of law. In her posthearing brief, Kaiser urged the board to dismiss the complaint or impose a sanction no greater than a public reprimand. The board recommends that to protect the public, Kaiser should be suspended from the practice of law for one year, fully stayed on the conditions that she complete six hours of CLE on law-office management within 90 days of the date of our order in this case and commit no further misconduct.

{¶ 18} In reaching that recommendation, the board considered and rejected two cases advanced by Kaiser to support her argument that she should receive no greater than a public reprimand for her misconduct. In one of those cases, *Medina Cty. Bar Assn. v. Schriver*, 2022-Ohio-486, ¶ 2-7, 17, we publicly reprimanded Schriver, an attorney who had neglected a single client matter, failed to promptly issue a refund to that client, and failed to respond to relator's letters of inquiry. But Kaiser's misconduct is more serious than Schriver's. While Kaiser did not fail to respond to relator's letters of inquiry—though her response to the initial letter of inquiry was delayed—she affirmatively made multiple false statements to relator during the disciplinary investigation and only admitted the falsity of those statements in her testimony before the panel.

{¶ 19} In the other case relied on by Kaiser and considered by the board, *Cleveland Metro. Bar Assn. v. Zaffiro*, 2010-Ohio-4830, ¶ 6, Zaffiro failed to inform a client that he did not carry professional-liability insurance, failed to cooperate in the ensuing disciplinary investigation, and made a single false statement to relator in which he agreed to provide relator with information regarding his professional-liability insurance when no such policy existed. We

publicly reprimanded Zaffiro for his misconduct. *Id.* at ¶ 11. But Kaiser's false statements alone far exceed Zaffiro's misconduct.

**{¶ 20}** The board also considered four cases in which we imposed conditionally stayed one-year suspensions on attorneys who engaged in misconduct comparable to that of Kaiser: *Disciplinary Counsel v. Devanney*, 2021-Ohio-1201; *Disciplinary Counsel v. Kendrick*, 2016-Ohio-5600; *Disciplinary Counsel v. Ferfolia*, 2022-Ohio-4220; and *Cleveland Metro. Bar Assn. v. Mariotti*, 2019-Ohio-5191.

**{¶ 21}** In *Devanney*, we imposed a conditionally stayed one-year suspension on an attorney who neglected a single client matter, failed to respond to the clients' reasonable requests for information, failed to promptly refund the clients' unearned fee upon termination of her representation, and made false statements to a law-enforcement officer and the clients regarding the status of that refund.

**{¶ 22}** In *Kendrick*, the attorney neglected two client matters, *Kendrick* at ¶ 5, 7, in contrast to Kaiser's neglect of one client matter. Kendrick also failed to reasonably communicate with a client and to deposit fee payments into her client trust account in both client matters. *Id.* In contrast to Kaiser, who made multiple false statements to relator in this case, Kendrick's dishonest conduct consisted of a single incident in which she used money she had received in one client matter to pay another client's filing fee. *Id.* at ¶ 5-8. While seven aggravating factors are present in Kaiser's case, the only aggravating factor in *Kendrick* was that she committed multiple violations of the Rules of Professional Conduct. *Id.* at ¶ 11. Mitigating factors in *Kendrick* included her timely, good-faith effort to make restitution, full cooperation in the disciplinary proceedings, evidence of her good character and reputation, and the existence of a qualifying mental disorder. *Id.* at ¶ 10. We imposed a one-year suspension for Kendrick's misconduct and stayed the entire suspension on the conditions that she serve a period of monitored probation,

submit to a psychological assessment, comply with all recommendations arising from that assessment, make restitution of $2,000 to one of her clients, and commit no further misconduct. *Id*. at ¶ 15.

{¶ 23} Like Kaiser, the attorney in *Ferfolia* neglected a single client matter. 2022-Ohio-4220 at ¶ 1. Specifically, Ferfolia failed to take timely action in representing a husband and wife who were seeking long-term-care Medicaid benefits for the husband. *Id*. Ferfolia also failed to comply with reasonable requests for information from the wife and others involved in the husband's care. *Id*. at ¶ 8-10. As a result of Ferfolia's neglect, the clients incurred over $87,000 in nursing-home expenses that otherwise would have been covered by Medicaid. *Id*. at ¶ 10. In comparison, the harm in this case was occasioned by Kaiser's delay of approximately 16 months in refunding Preece's $200 retainer. Ferfolia also engaged in dishonest conduct by falsely leading his clients and others, including the clients' legal-malpractice attorney, to believe that he had submitted a claim on the clients' behalf with his professional-liability carrier, *id*. at ¶ 11-13, and by repeatedly making false claims and assurances to relator regarding his response to the clients' grievance, which he never submitted to relator. *Id*. at ¶ 15-17.

{¶ 24} Three aggravating factors were present in *Ferfolia*: (1) a dishonest or selfish motive, (2) multiple offenses, and (3) harm to vulnerable clients. *Id*. at ¶ 19. Mitigating factors included Ferfolia's clean disciplinary record, his eventual cooperation in the disciplinary proceedings, and evidence of his good character and reputation. *Id*. at ¶ 20. We suspended Ferfolia from the practice of law for one year, fully stayed on conditions that required him to submit to an assessment by the Ohio Lawyers Assistance Program and comply with any treatment recommendations, pay the balance of the professional-malpractice judgment entered against him, and commit no further misconduct. *Id*. at ¶ 29.

{¶ 25} Finally, the board considered *Mariotti*, 2019-Ohio-5191.[1]  Mariotti neglected a client's legal matter, twice lied to that client about the status of the matter, and failed to communicate the limited scope of his representation to another client.  *Id.* at ¶ 6-8, 12, 15-16.  He also failed to attend one hearing for each client, failed to reasonably communicate with the clients, failed to deposit an unearned fee into his client trust account, and failed to inform the clients that he did not carry professional-liability insurance.  *Id*. at ¶ 6-9, 11, 14-16.  In addition, Mariotti failed to cooperate in the ensuing disciplinary investigation until he was compelled by subpoena to do so.  *Id*. at ¶ 18.  Also, Mariotti's failure to timely answer the formal disciplinary complaint against him resulted in the imposition of a brief interim default suspension before the matter was remanded (on his motion) to the board for proceedings on the merits.  *Id*. at ¶ 3.

{¶ 26} Five aggravating factors were present in *Mariotti*: (1) prior CLE and registration suspensions, (2) a dishonest or selfish motive, (3) a pattern of misconduct, (4) multiple offenses, and (5) the interim default suspension imposed for the initial failure to cooperate in the disciplinary proceedings.  *Id*. at ¶ 21.  Mitigating factors included Mariotti's cooperative attitude during the disciplinary hearing and his genuine remorse.  *Id*.  We suspended Mariotti from the practice of law for one year, fully stayed on the conditions that he complete six hours of CLE focused on law-office management, serve a one-year period of monitored probation, and engage in no further misconduct.  *Id*. at ¶ 28.

{¶ 27} In this case, Kaiser accepted $200 from Preece as a retainer for her representation in a custody matter.  Kaiser did not, however, request or obtain even the most basic information necessary to accomplish that representation—e.g., an address or a phone number by which she could reach Preece to discuss her case.

---

1. Although the board cited *Cleveland Metro. Bar Assn. v. Mariotti*, 2018-Ohio-4769, the board's analysis demonstrates that the board actually considered *Mariotti*, 2019-Ohio-5191, a later decision in the same case.

Although Preece gave Kaiser her first and last names, Kaiser recorded just Preece's first name on the outside of a file folder, clipped the $200 cash payment to the folder, and then put the folder into a desk drawer. She then failed to return Preece's phone calls both before and after she failed to appear at a court hearing in Preece's custody case.

{¶ 28} While Kaiser's conduct fell below the standard of reasonable diligence in representing a client set forth in Prof.Cond.R. 1.3 and the standard for proper handling of client funds set forth in Prof.Cond.R. 1.15(c), Kaiser likely could have avoided this entire disciplinary proceeding by accepting responsibility for her conduct from the beginning, apologizing to Preece for her neglect, and honoring Preece's request for a refund. Instead, Kaiser reacted to what she called Preece's "very accusatory manner" by suggesting that Preece had been to blame for Kaiser's inaction and refusal to refund Preece's $200 payment. In August 2022, relator notified Kaiser that her meeting with Preece had been recorded. Moreover, Kaiser was duty bound to cooperate in relator's investigation under Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (respectively, requiring an attorney to cooperate in a disciplinary investigation and prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation). Despite her ethical duties and her knowledge that Preece claimed to have a recording of Kaiser admitting that she had received $200 from Preece, Kaiser falsely told relator that Preece never appeared at her office in February 2022 to discuss legal representation, that she never represented Preece, and that Preece did not pay her $200 or any other amount.

{¶ 29} Even after Kaiser viewed the videorecording of her April 2022 interaction with Preece, she did not acknowledge the falsity of her previous denials regarding her representation of Preece. Nor did she promptly refund the unearned fee to Preece. Rather, she claimed that she needed additional information from relator—including a case number—so that she could fully investigate Preece's allegations.

10

**{¶ 30}** Although Kaiser eventually admitted in her testimony before the panel that she had falsely denied the allegations against her, she did not acknowledge the wrongful nature of her conduct. Instead, she chose to blame her blanket denial of the allegations on her experience as a defense attorney and to claim that she had "just wanted information" and had "needed [information] so badly." Neither Kaiser's experience as a defense attorney nor her purported need of more information excuse her deceit. Furthermore, the record in this case plainly demonstrates that no amount of additional information could have aided Kaiser, because she had not obtained any additional information from Preece or generated any records. Therefore, she had no documents to review to refresh her recollection.

**{¶ 31}** On these facts, we find that Kaiser's misconduct is more serious than the misconduct at issue in *Schriver* and *Zaffiro* and therefore requires a sanction greater than the public reprimands that we imposed in those cases. We agree with the board's conclusion that Kaiser's misconduct falls squarely within the spectrum of misconduct addressed in *Devanney*, *Kendrick*, *Ferfolia*, and *Mariotti* and that her conduct warrants a sanction comparable to the sanctions imposed in those cases to protect the public from further harm. We therefore adopt the board's recommendation that Kaiser be suspended from the practice of law for one year, with the entire suspension stayed on the conditions recommended by the board.

## CONCLUSION

**{¶ 32}** Accordingly, Jo Ellen Kaiser is suspended from the practice of law in Ohio for one year, fully stayed on the conditions that she complete six hours of CLE focused on law-office management within 90 days of the date of this court's order in this case and commit no further misconduct. If Kaiser fails to comply with any condition of the stay, the stay will be lifted and she will serve the full one-year suspension. Costs are taxed to Kaiser.

Judgment accordingly.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 33} I concur in part in the majority's decision because I agree with the majority's findings regarding respondent Jo Ellen Kaiser's violations of the Ohio Rules of Professional Conduct, the aggravating factors, and the mitigating factors. However, I dissent from the majority's decision to suspend Kaiser from the practice of law for one year with the entire suspension stayed on conditions. In my view, Kaiser's misconduct warrants more than a fully stayed suspension. Kaiser neglected a client matter, attempted to steal $200 from the client by refusing to refund the retainer that the client had paid to her, lied to the client, and lied to relator, disciplinary counsel. Based on our caselaw, I would indefinitely suspend Kaiser from the practice of law.

{¶ 34} We have recognized that "the presumptive sanction for neglect of client matters coupled with the failure to cooperate in the ensuing disciplinary investigation is an indefinite suspension from the practice of law." *Disciplinary Counsel v. Engel*, 2018-Ohio-2988, ¶ 13. Here, Kaiser neglected a legal matter by not appearing on behalf of her client, Tina Preece, at an April 5, 2022 custody hearing that Preece had informed her about. Kaiser then failed to cooperate in the ensuing disciplinary investigation by lying to disciplinary counsel, stating that (1) she never represented Preece, (2) Preece did not pay her $200 or any other amount, and (3) Preece did not discuss the legal representation with Kaiser at Kaiser's office in February 2022.

{¶ 35} There have been cases in which the respondent attorney overcame a presumption in favor of an indefinite suspension and we imposed a lesser sanction, but in those cases the attorney's misconduct either did not cause irreparable harm to a client or did not involve dishonesty. *See, e.g.*, *Disciplinary Counsel v. Hallquist*, 2011-Ohio-1819, ¶ 12, 15-16; *Stark Cty. Bar Assn. v. Marosan*, 2005-Ohio-5412, ¶ 24-25. For example, in *Hallquist*, we imposed a two-year suspension, with the last six months stayed on conditions, because "although serious, [the

attorney's] misconduct [did] not cause[] irreparable harm to any clients." *Hallquist* at ¶ 15. Similarly, in *Marosan*, we imposed a two-year suspension, with 18 months stayed, because "the [attorney's] misconduct, while serious, did not involve dishonesty and did not result in irreparable harm to his clients." *Marosan* at ¶ 24.

{¶ 36} In *Hallquist* and *Marosan*, the attorneys failed to cooperate in the disciplinary proceedings by not responding to the relators' requests for information. *Hallquist* at ¶ 7-8; *Marosan* at ¶ 11, 20, 23. Unlike the attorneys in *Hallquist* and *Marosan*, Kaiser failed to cooperate in the disciplinary proceedings by explicitly lying to disciplinary counsel. Prof.Cond.R. 8.1(a), which this court finds Kaiser violated, prohibits an attorney from "knowingly mak[ing] a false statement of material fact" in connection with a disciplinary matter. And any "false and inconsistent statements [made] during the disciplinary process [will be considered] aggravating factors weighing in favor of a greater sanction," *Disciplinary Counsel v. Jackson*, 2010-Ohio-5709, ¶ 15, *reinstatement granted*, 2019-Ohio-1566. When an attorney violates Prof.Cond.R. 8.1(a), "an actual suspension is necessary," *Disciplinary Counsel v. Meyer*, 2012-Ohio-5487, ¶ 12, because an attorney must be forthright and honest once he or she is in the realm of a disciplinary investigation. And because Kaiser's conduct violated Prof.Cond.R. 8.1(a) and involved dishonesty, the presumption in favor of an indefinite suspension has not been overcome.

{¶ 37} The majority properly acknowledges that "[n]either Kaiser's experience as a defense attorney nor her purported need of more information excuse her deceit." Majority opinion, ¶ 30. But the majority fails to follow precedent to appropriately sanction her deceit. Given the presumption of an indefinite suspension that we have established for cases in which the attorney neglected a client matter and failed to cooperate in the ensuing disciplinary investigation by being dishonest, an indefinite suspension is the only proper sanction here. Additionally, imposition of an indefinite suspension for Kaiser's misconduct will

"'demonstrat[e] to the bar and the public that this type of conduct will not be tolerated,' " *Disciplinary Counsel v. Nowicki*, 2023-Ohio-3079, ¶ 83 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. Schuman*, 2017-Ohio-8800, ¶ 17. Therefore, I would impose an indefinite suspension for Kaiser's misconduct. Because the majority holds otherwise, I dissent in part.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Benjamin B. Nelson, Assistant Disciplinary Counsel, for relator.

Ulmer & Berne, L.L.P., and Alvin E. Mathews Jr., for respondent.

_____